TENNGASCO GAS GATHERING
COMPANY, Appellant,

v.

C. E. FISCHER, Appellee.

No. 1843.

Court of Appeals of Texas,
Corpus Christi.

Oct. 22, 1981.

Rehearing Denied Nov. 19, 1981.

William H. Keys, Keys, Russell & Seaman, Corpus Christi, for appellant.

Frank Weathered, Meredith & Donnell, Corpus Christi, E. B. Grimes, Robstown, for appellee.

Before BISSETT, YOUNG and GONZALEZ, JJ.

## OPINION

BISSETT, Justice.

This is a gas pipeline condemnation case. Tenngasco Gas Gathering Company [hereinafter "the pipeline company"] filed a petition in condemnation seeking a permanent easement and right of way twenty feet wide and a temporary construction easement seventy-five feet wide across a 144 acre tract of farm land located in Nueces County, Texas, and owned by C. E. Fischer ["the landowner"]. The parties were unable to agree on the matter of damages and the Special Commissioners awarded the landowner $5,750.00 as damages. The landowner contested the award and filed appropriate exceptions and objections thereto. A jury trial in the Nueces County Court at Law No. 3 followed.

The jury found that the value of the twenty foot permanent easement and right of way before the taking to be $2,412.00 and $3,159.00 after the taking. It further found that the "before" value of the remaining portion of the tract (approximately 143 acres) to be $553,788.00 and its "after" value to be $434,841.00. Judgment was rendered on the verdict. The pipeline company has appealed.

No complaint is registered in this appeal concerning the damages awarded for either the taking of the twenty foot permanent easement or the damages caused by the temporary construction of the pipeline. However, the pipeline company does complain of the finding that the market value of the remainder of the subject property immediately before the taking of the easement was $553,788.00, and of the finding that the market value of such remainder immediately after the taking of subject easement was $434,841.00.

■ We first address the pipeline company's contentions that the trial court erred in permitting Mr. William Nicholson, over its objections, to testify. It is argued that Nicholson was an expert witness, not named in answers to interrogatories propounded to the landowner, and that, therefore, he should not have been allowed to testify. The landowner, on the other hand, argues that Nicholson was offered as a lay witness who merely gave testimony concerning his personal experiences in land development.

The pipeline company's contention that Nicholson was an expert witness is based on his background and on the subject matter of his testimony. The record reveals that he is a registered civil engineer. It is also shown that he developed the Quail Valley subdivision in Nueces County. This subdivision, some several miles from the Fischer tract (the land involved in this appeal), consists of approximately three hundred twenty acres of land with about ten pipelines running through it. Nicholson detailed the problems he had while developing Quail

Valley, which were caused by the existence of the pipelines.

The purpose of Nicholson's testimony, according to the landowner, was to rebut the statements of Mr. Richard Clower, the pipeline company's expert, that the placing of a gas pipeline across land does not affect its value. Nicholson never related his experiences to the Fischer tract. He gave no opinions regarding the effect a gas pipeline would have on the Fischer tract, but simply stated the difficulties he encountered in developing Quail Valley. The fact that he possessed the requisite qualifications to give an opinion concerning the Fischer tract did not make him an expert witness in this particular case. He never went beyond the realm of his personal experiences in developing Quail Valley, and was, therefore, a lay witness, rather than an expert, regardless of his qualifications and background in civil engineering. Had he offered an opinion, based on his experiences and training, as to the effect a gas pipeline would have on the Fischer tract, a different case would be before us. But, because he was careful to speak only of his own experiences in land development, we hold he was a mere lay witness, and not an expert.

■ If we assume, for argument purposes only, that Nicholson was an expert, his testimony was not rendered inadmissible per se by the landowner's failure to supplement his answers to the interrogatories. The sanctions imposed for failing to abide by the discovery rules are within the sound discretion of the trial court. Its refusal to impose sanctions can be reversed only upon a clear showing of abuse of discretion. *See Hankins v. Haffa*, 469 S.W.2d 733, 738 (Tex. Civ.App.—Amarillo 1971, no writ).

After a review of the record, we find that Nicholson was not the only witness who gave testimony concerning the effect that a pipeline will have on land. Mr. Herman Fischer, Mr. John Reagan, and the landowner, gave testimony which touched this issue; Nicholson's testimony was therefore merely cumulative of other testimony. No abuse of discretion is shown. The trial court did not err in permitting Nicholson to testify.

We next consider the pipeline company's complaint that the trial court erred in allowing the landowner's witness, Mr. John H. Reagan, over its objections, to testify as to the value of the remainder of the subject land before and after the taking of the pipeline easement. As grounds therefor, the pipeline company says: 1) the opinion was based upon the sales of individual lots out of existing developed subdivisions; and 2) by such testimony the witness could not have formulated an opinion as to the value of defendant's land without using the value of sales in other existing and developed subdivisions.

During cross-examination, Reagan testified that he took into consideration sales figures of lots in existing, developed subdivisions, and could not have otherwise reached an opinion on the value of the subject property. The pipeline company contends this was improper because the subject property is undeveloped farm land and therefore Reagan's testimony should have been excluded.

The land involved in this appeal is raw, unplatted land which was under cultivation. It comprises approximately 144 acres and is located between "Five Points" and Robstown in Nueces County, Texas. It is bound on the east by FM Road 1694, and on the west by U. S. Highway 77. The Missouri-Pacific railroad tracks run diagonally from the southwest to the northeast across the west part of the tract. The permanent easement for the gas pipeline is a strip twenty feet wide and runs diagonally from southeast to northwest across the tract. Although the testimony is conflicting, there is evidence which puts the acreage of that part of the tract west of the railroad to be from twenty-eight to thirty-five acres and there is also testimony which puts the acreage of the remainder of the tract to be from one hundred nine to one hundred sixteen acres.

■ In valuing raw acreage, prices paid for subdivision lots are inadmissible. *State v. Willey*, 360 S.W.2d 524, 525 (Tex.1962).

It is conceded by the pipeline company that Reagan did not testify with respect to the prices paid for, or the value of, individual lots in the neighboring subdivisions. Thus, the issue is whether an expert's opinion as to the value of raw acreage is admissible once it is shown that the expert, in formulating that opinion, relied upon the sales prices of lots in nearby subdivided areas. We hold that such opinion evidence is admissible.

■■■ The factual basis upon which an expert arrives at his opinion goes to the weight of his testimony, not to its admissibility. *Texas Sanitation Co. v. Marek,* 381 S.W.2d 710, 716 (Tex.Civ.App.—Corpus Christi 1964, no writ); *State v. Sides,* 348 S.W.2d 446, 452 (Tex.Civ.App.—Dallas 1961, writ ref'd n.r.e.); *Hays v. State,* 342 S.W.2d 167, 174 (Tex.Civ.App.—Dallas 1960, writ ref'd n.r.e.). Since the pipeline company's objections to Reagan's testimony went to its weight and not to its admissibility, the trial court did not err by allowing Reagan to testify.

The pipeline company also attacks the jury findings of the value of the remainder of the Fischer tract of land before the taking and the value thereof after the taking by bringing forward "no evidence" points, "factual insufficient evidence" points and "against the great weight and preponderance of the evidence" points. In disposing of these points, we follow the well established standards set forth in *Garza v. Alviar,* 395 S.W.2d 821 (Tex.1965), and in *In Re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951).

The pipeline company called Mr. Richard Clower, a local real estate appraiser, as its expert witness. Using a "market data" approach in order to determine the "highest and best use" of the remainder of the tract, he divided the land into two different areas. The first area, approximately thirty-five acres, according to him, was located between the Missouri-Pacific railroad and U. S. Highway 77 and was designated as "light industrial"; he gave a "before" value of $9,000.00 per acre and an "after" value also of $9,000.00 per acre for the light industrial

area. The second area, which he said comprised approximately one hundred nine acres, was placed between the railroad and FM Road 1694. He designated this area as "residential" and gave a "before" value of $3,000.00 per acre and an "after" value of also $3,000.00 per acre. In summary, he testified that the remaining tract was worth $628,101.00 before and $628,101.00 after the taking of the easement. Clower admitted, however, that estimates in this particular type of case are difficult because of the uncertainty of the effects that pipelines would have on the remainder of the tract. He further stated that residential value of the one hundred nine acres east of the railroad could be diminished if the pipeline asserted its legal right under the easement to construct surface structures in connection with the use of the pipeline.

Mr. John H. Reagan, also a local real estate developer, was called by the landowner as an expert. He, like Clower, essentially divided the remaining one hundred forty-three acres of the subject land into a west section between U. S. Highway 77 and the railroad, which he designated as "light industrial," and the east section between the railroad and FM Road 1694, which he designated as "residential." According to him the west section which he said comprised about twenty-eight acres, had a "before" market value of about $7,500.00 per acre, and an "after" value of about $3,500.00 per acre. Concerning the east section, which he said comprised about one hundred sixteen acres had a "before" value of about $3,000.00 an acre and an "after" value of about $2,000.00 per acre. Reagan's testimony was based upon his expertise in the field of real estate sales and development and upon his knowledge of the values of land in the area of the subject land. He stated that the one hundred sixteen acres which were ready for residential development had lost $1,000.00 per acre in value because of the pipeline; he based his opinion, in part, upon his knowledge that pipelines can restrict residential development. In determining the "after" value of land for residential purposes, he took into considera-

tion the fact that raw, unplatted agricultural land with pipelines thereon is less valuable for development for residential purposes than comparable lands without any pipelines thereon. He reasoned that the existence of pipelines not only complicates the subdivision processes but results in greater expenses to a developer.

The landowner himself testified. In summary, he said that the remainder of his land had been diminished in value as a result of the taking of the permanent pipeline easement against the land in question. His brother, Herman Fischer, who farms the land with him, also testified that the taking of the easement damaged the land.

Mr. Nicholson told the jury about certain problems he had experienced concerning his development of the Quail Valley Subdivision, which was located several miles away from the subject land. According to him this subdivision consists of three hundred twenty acres and upon which were located ten pipelines. He said that many problems arose in developing the subdivision. Among such problems, in addition to locating the exact boundaries of each easement, streets and lots had to conform to the direction of the lines and that special easement clearances had been obtained from the several companies who owned and operated the lines. As a result according to him, the expenses to the developer were increased, fewer lots were subdivided because of the pipelines, more time was required for development, and the shape of the lots had to conform with the placement of the pipelines. He concluded that the presence of the pipelines damaged the land which he purchased for subdivision purposes.

■ It was within the exclusive province of the jury to judge the credibility of the witnesses and to determine the weight to be given their testimony. *Johnson v. Buck*, 540 S.W.2d 393 (Tex.Civ.App.—Corpus Christi 1976, writ ref'd n.r.e.). After reviewing the entire record we hold that there is ample evidence of probative value to support the jury's findings.

The pipeline company further complains of the trial court's decision that material jury misconduct did not occur. This complaint is based on allegations that the jury discussed the danger of pipeline explosions and that the discussions became the basis upon which the jurors reached their decision. The pipeline company also contends that the trial court erred in granting the landowner's motion to quash subpoenas directed to the members of the jury, and that the trial court "erred and abused its discretion in refusing to hear the testimony of jurors. . . ." In fact, however, the trial court did not refuse to hear such testimony. The court merely refused to *compel* the jurors to appear and testify. The trial court specifically stated that it would hear testimony from any juror who desired to appear voluntarily and testify.

■ In support of its allegations of jury misconduct, the pipeline company offered three affidavits. The first two affidavits were of an attorney who attempted to contact the jurors, and of one of the attorney's employees. An affidavit of a person who was not a member of the jury whose conduct is in question is insufficient to establish material jury misconduct because such an affidavit is based upon hearsay testimony. *Cortez v. Medical Protective Co., of Ft. Wayne*, 560 S.W.2d 132, 137 (Tex.Civ.App. —Corpus Christi 1977, writ ref'd n.r.e.). Accordingly, the first two affidavits will not be considered by this Court.

The third affidavit is of a juror who states that during the deliberations the jury "mentioned" the danger of pipeline explosions. The affidavit, as originally prepared was changed by the juror/affiant, who marked through the words "talked about" and "discussed" and inserted the word "mentioned." Thus, rather than state that the danger of pipeline explosions was *talked about* and *discussed*, the juror/affiant would state only that this subject was *mentioned.* The landowner, in his motion to quash the subpoenas, presented affidavits of four jurors. Each stated that the danger of pipeline explosions as being a factor which would reduce the value of the land in

question was mentioned during deliberations by the jury.

To have been entitled to subpoena all the jurors to testify at the hearing on its motion for new trial, the pipeline company had the burden of presenting to the trial court an affidavit of a juror setting forth specific facts concerning the act of misconduct relied upon. *Cortez v. Medical Protective Co., of Ft. Wayne, supra* at 136. Since the pipeline company did present an affidavit of a juror, we must decide whether that affidavit was sufficient to show material jury misconduct. As stated above, the affidavit states only that the danger of pipeline explosions was *mentioned* by the jury. Whether this constituted jury misconduct is an issue of fact which was resolved by the trial court against the pipeline company. The trial court's ruling on that issue will be accepted as final if it is supported by the evidence. *McAllen Coca Cola Bottling Co., Inc. v. Alvarez*, 581 S.W.2d 201, 204 (Tex. Civ.App.—Corpus Christi 1979 (no writ).

A pipeline superintendent, called as a witness by the pipeline company, testified on cross-examination that pipelines carrying natural gas may leak; that natural gas will burn; and that he had heard of gas pipeline explosions. Thus, the jury's mentioning of gas pipeline explosions has some support in the evidence. A logical inference drawn from the testimony concerning pipeline leaks is the possibility of natural gas explosions. "Jurors' deductions, inferences from the evidence, and reasoning, though faulty, illogical, arbitrary, or bizarre, do not constitute misconduct." Pope, The Mental Operations of Jurors, 40 Tex.L. Rev. 849, 854 (1962). We hold that the jury's mentioning of the danger of pipeline explosions is insufficient to establish material jury misconduct. Since the pipeline company failed to show any act constituting material jury misconduct, the trial court did not err in quashing the subpoenas of the jurors nor in overruling its motion for new trial.

We have reviewed the record in its entirety and have carefully considered all of the points of error raised by the pipeline company. They are all overruled.

The judgment of the trial court is AFFIRMED.