GOLDEN EAGLE ARCHERY,
INC., Petitioner,

v.

Ronald JACKSON, Respondent.

No. 98–1076.

Supreme Court of Texas.

Argued April 6, 1999.

Decided June 29, 2000.

Jacqueline M. Stroh, Crofts, Callaway &
Jefferson, San Antonio, Lipscomb Norvell,

Jr., Benckenstein Norvell & Nathan, Beaumont, for Petitioner.

David B. Gaultney, John Cash Smith, Mehaffy & Weber, Beaumont, George Barron, Orange, for Respondent.

Justice GONZALES delivered the opinion of the Court, in which Chief Justice PHILLIPS, Justice HECHT, Justice ENOCH, Justice OWEN, Justice BAKER, Justice HANKINSON and Justice O'NEILL joined.

The main issue in this case is whether procedural and evidentiary rules may constitutionally prohibit jurors from testifying post-verdict about statements made during deliberations, unless such statements concern outside influences. *See* TEX.R. CIV. P. 327(b); TEX.R. CIV. EVID. 606(b). Ronald Jackson obtained a verdict in a products liability case, but moved for a new trial on several grounds, including juror misconduct, juror bias, and the adequacy of the verdict. After a hearing, the trial court denied the motion. The court of appeals reversed and remanded for a new trial, holding that Texas Rule of Civil Procedure 327(b) denied Jackson his constitutional right to a fair and impartial jury trial because it prohibited him from proving jury misconduct during deliberations. 974 S.W.2d 952, 954. Because we conclude that the rule is constitutional, we reverse the court of appeals's judgment and remand to that court to consider Jackson's other points of error that the court of appeals did not reach.

## I

Jackson's wife bought him a Golden Eagle compound bow from a Wal–Mart store. When Jackson drew back the string the bow slipped out of his hand and a cable guard struck his eye, causing severe injuries. He sued Golden Eagle Archery, Inc., Coleman Company, Inc., and Wal–Mart, Inc. for negligence and products liability. The trial court dismissed the claims against Coleman and Wal–Mart, leaving Golden Eagle as the sole defendant. The jury found that Golden Eagle defectively marketed the bow but failed to find that the bow was defectively designed. The jury also found that Jackson was negligent, and attributed to him 45% of the responsibility for his injury. The jury found Jackson's damages to be approximately $25,000 for medical care, $2,500 for physical pain and mental anguish, $2,500 for vision loss, $0 for physical impairment other than vision loss, $1,500 for disfigurement, and $4,600 for past lost earnings. Ten of the twelve jurors signed the verdict. The trial court asked the ten if they agreed to the entire verdict, but neither party asked to poll the individual jurors. The trial court then rendered a judgment for approximately $20,000 damages and $6,700 prejudgment interest.

Jackson moved for a new trial. He challenged the legal and factual sufficiency of the evidence to support several of the jury's answers, contested the trial court's exclusion of certain evidence, and alleged that juror Barbara Maxwell concealed a bias during voir dire and that she and other jurors committed misconduct before and during formal deliberations. The motion attached affidavits from one of Jackson's attorneys and three jurors. Two of the affidavits were from the jurors who did not vote for the verdict, Donald Frederick and Janet Cline. A third was from the presiding juror, Shawn Lynch. The motion asserted that even though Texas Rule of Civil Procedure 327(b) prohibits consideration of juror affidavits to impeach the verdict, to ignore the evidence of misconduct during deliberations would unconstitutionally deny Jackson his right to a fair trial. Golden Eagle responded that both Rule 327(b) and Texas Rule of Civil Evidence 606(b) prohibit the court from considering the juror's affidavits, that Jackson's attorney's affidavit primarily recounted hearsay statements about what some jurors told him, and that Jackson waived any juror-bias complaint because he did not conduct a sufficient voir dire.

At the hearing on his motion for new trial, Jackson offered the four affidavits as well as juror Frederick's testimony. The

trial court admitted the testimony and affidavits without limitation "to the extent they contain appropriate evidentiary matters for consideration under Rule 327," and otherwise for the purposes of Jackson's bill of exceptions. At the hearing, Jackson's attorney read passages from the voir dire questioning of the jurors to demonstrate that Maxwell had hidden her bias against lawsuits of this kind. Jackson's attorney began voir dire with a lengthy question about whether any jurors were opposed to lawsuits, or could not be fair, or simply did not want to be on a jury.[1] A panel member raised his hand. Jackson's attorney told the juror he would ask him more questions later, then asked the panel, "Anyone else?" No one responded. Jackson's attorney continued:

> Is there anybody here, by the same token, who would just say, "Look, I just can't do that. I can't—I don't believe in it. I just can't give a verdict that means that somebody is going to have to pay a lot of money"? Anybody here that— again, if you do, now is the time. You owe it to yourself and you owe it to these people and to the Court to be honest about it because we—all we can do is ask you about it, but you have to tell us. Anybody here that could not do that?

Again, no one responded. Finally, Jackson's attorney asked the panel if any of them had served on a jury. Maxwell answered that she had served on both a civil and a criminal case. She said the civil case involved a man's death in an accident. Jackson's attorney asked:

Q Did you—did you reach a verdict in that case?

A No.

Q Anything about that case that would keep you from being fair here?

A No, sir.

Frederick testified in his affidavit and at the hearing about a conversation he had with Maxwell during a trial recess. According to Frederick, Maxwell told him that previously she had served on a jury that awarded nothing for a wrongful death claim, which Frederick thought contradicted her voir dire statements, and further told him she did not believe in "awarding money in stuff like that," and that "we are the ones who end up paying for it."

The remaining juror testimony concerned events occurring after the jury retired to begin deliberating the evidence. Frederick, Cline, and Lynch all recalled that the jury bartered on the amounts to award for disfigurement and loss of vision, although their accounts contradict each other in the specifics. Frederick said that initially ten jurors had agreed to award $2,500 for disfigurement and nine had agreed to award $2,500 for loss of vision, but traded votes to award $1,500 for disfigurement and $2,500 for loss of vision.

---

1. [W]e're in this lawsuit concerning what we contend to be an unreasonably dangerous product that injured an unknowing consumer. And Mr. Jackson has a right to be here. He has a right to ask a Court in this county to render him a fair verdict; but there are people that, for many reasons, of their own, again, are opposed to this type of lawsuit. They just don't think that this ought to be done, that they're opposed to lawsuits. They don't think they ought to happen, that they can't render verdicts in this case, these types of cases, et cetera. If that is the case—of course, you're entitled to your opinions; and I would fight anybody for you to have that opinion. But if that's the case, you should not be on this jury because we are operating within the—within the parameters of the law; and we are doing something that Mr. Jackson has every right to do and every right to request of a Jefferson County jury.

Is there anyone on this panel that right now would say, "Look, I just don't want to sit on this kind of jury. I need out of here. I don't want to be here. I can't be fair. These type of things bother me. I don't agree with the system, too much stress," whatever; that you want to tell the Judge, tell Judge Sheffield or me and [defense counsel] right now, "I don't want to be here"? If you do, I would ask you please to be honest and do that right now because our system depends on the integrity of our jury system and the integrity of jurors. Is there anyone here that says, "I can't do this"? Anyone?

Lynch, however, claimed that initially ten jurors had agreed on $1,500 for loss of vision, and eight agreed on $2,500 for disfigurement, but ultimately decided to switch these amounts. Cline merely remembered that the jurors "traded off" on these answers.

Frederick also stated that during the jury's discussion of damages, Maxwell told other jurors that "there is too much of this going on," which he took to mean the filing of lawsuits. He said that she "held up a document which showed the name of Wal–Mart and said something to the effect that the plaintiff had probably already gotten a big settlement from Wal–Mart and did not need any more money out of this case."

Frederick and Lynch additionally testified that during jury room deliberations Maxwell speculated whether Jackson had been drinking alcoholic beverages when the accident occurred. Finally, all three juror affidavits claim that Maxwell strongly argued against Jackson's position throughout the jury room deliberations.

The trial court overruled Jackson's motion for a new trial explaining its ruling in a letter to the parties. The court advised it would not sustain Jackson's jury misconduct arguments because the jurors' affidavits and testimony all pertained to jury deliberations and were therefore incompetent. The court also rejected Jackson's complaints about undisclosed juror bias. Acknowledging that the same evidence offered to show jury misconduct "would certainly support a conclusion that the juror in question was biased against product liability suits" the court did not resolve whether Maxwell was in fact biased. Instead, the court concluded that Jackson's attorney's voir dire questioning of Maxwell was not specific enough to show she purposefully concealed any bias. Jackson did not request the trial court to make any fact findings about any of these issues.

On appeal, Jackson asserted eight points of error, any one of which, if sustained, would result in a new trial. His first six points challenged the sufficiency of the amount of the damages awarded, the weight of the evidence supporting the jury's verdict, and the exclusion of certain evidence. The court of appeals addressed only Jackson's last two points about jury misconduct and juror bias. A divided court of appeals reversed the trial court's judgment and remanded the case for a new trial. The court expressed its concern about "the ever increasing lack of veracity of jurors on voir dire...." 974 S.W.2d at 957. The court held that because Rule 327(b) denied Jackson the only evidence available to prove misconduct, it denied him his right to a fair and impartial trial. It concluded that the evidence established Maxwell's misconduct, and that the misconduct was material and caused harm. Golden Eagle petitioned this Court for review, and we granted the petition.

II

This case turns on whether, and to what extent, the jurors' affidavits and testimony are admissible to show juror misconduct such as undisclosed bias. The problem of jury misconduct or bias presents difficult choices about how best to promote the jury system's "purity and efficiency" under Article I, Section 15 of the Texas Constitution. On the one hand, it may be desirable in a particular case to rectify a verdict improperly decided because of juror bias or misconduct. A fair trial before an impartial tribunal is a basic requirement of due process. *See In re Murchison,* 349 U.S. 133, 136, 75 S.Ct. 623, 99 L.Ed. 942 (1955). However, the goal of a trial by a jury free from bias or misconduct must be balanced against other legitimate interests. *See Maldonado v. Missouri Pac. Ry. Co.,* 798 F.2d 764, 770 (5th Cir.1986). Courts and commentators have noted several policy reasons why losing parties should not be allowed to conduct unfettered investigations into the jury's deliberations to try to prove such allegations, in essence putting the jury on trial.

First, jury deliberations must be kept private to encourage jurors to candidly discuss the case. A verdict is a collaborative effort requiring individuals from different backgrounds to reach a consensus. A juror should feel free to raise and consider an unpopular viewpoint. To discharge their duties effectively, jurors must be able to discuss the evidence and issues without fear that their deliberations will later be held up to public scrutiny. Second, there is a recognized need to protect jurors from post-trial harassment or tampering. The losing party has every incentive to try to get jurors to testify to defects in their deliberations. The winning party would likewise want to investigate in order to protect the judgment. Jury service will be less attractive if the litigants can harass a juror after trial, call a juror to testify about jury deliberations, and make juror deliberations public. Third, a disgruntled juror whose view did not prevail in the jury room would have an avenue for vindication by overturning the verdict. This is a significant concern in Texas civil trials, in which the verdict may be less than unanimous. Fourth is the need for finality. Litigation must end at some point if the public is to have any confidence in judgments. *See generally Tanner v. United States*, 483 U.S. 107, 119–20, 107 S.Ct. 2739, 97 L.Ed.2d 90 (1987); *McDonald v. Pless*, 238 U.S. 264, 267–68, 35 S.Ct. 783, 59 L.Ed. 1300 (1915); *United States v. Sjeklocha*, 843 F.2d 485, 488 (11th Cir. 1988); *Maldonado*, 798 F.2d at 770; Diehm, *Impeachment of Jury Verdicts: Tanner v. United States and Beyond*, 65 St. John's L.Rev. 389, 394–403 (1991); Swaine, *Pre Deliberations Juror Misconduct, Evidential Incompetence, and Juror Responsibility*, 98 Yale L.J. 187, 188 (1988); Weinstein, *Protecting a Juror's Right to Privacy: Constitutional Constraints and Policy Options*, 70 Temple L.Rev. 1 (1997); *see also Commission For Lawyer Discipline v. Benton*, 980 S.W.2d 425, 432–33 (Tex.1998) (discussing principle that the parties' and the media's constitutional rights to communicate with dis-

charged jurors must sometimes yield to the state's constitutional interest in protecting the jury system by preventing post-verdict juror harassment).

As one authority explained, "[t]he question, which has vexed courts for years, is how far can they go in opening verdicts to attack on such grounds before the cure becomes worse than the disease." 1 Goode et al., Guide to the Texas Rules of Evidence: Civil and Criminal, § 606.02 (Texas Practice 1993). The answer under English common law was the doctrine that a juror may not impeach the verdict. The doctrine's roots are traceable to an early Lord Mansfield common-law decision. *See Vaise v. Delaval*, 99 Eng. Rep. 944 (K.B. 1785), *discussed in* Copeland, Comment, *The Room Without a View: Inquiries into Jury Misconduct After the Adoption of Texas Rule of Evidence 606(b)*, 38 Baylor L.Rev. 965, 968 (1986). Early Texas decisions followed the Lord Mansfield rule and flatly prohibited jurors from impeaching the verdict. *See, e.g., St. Louis S.W. Ry. Co. v. Ricketts*, 96 Tex. 68, 70 S.W. 315, 317 (1902); *Campbell v. Skidmore*, 1 Tex. 475, 477 (1846). In 1905, however, the Legislature adopted an exception to this common-law jury-incompetency rule. *See* Act of Feb. 24, 1905, ch. 18, 1905 Tex. Gen. Laws 21, *repealed by* Act of May 15, 1939, ch. 25, § 1, 1939 Tex. Gen. Laws 201. The statute allowed courts, at their discretion, to receive juror testimony about misconduct. *See id.;* Copeland, 38 Baylor L.Rev. at 968 (1986). In 1941, this Court promulgated the earliest version of Rule 327, which placed the burden on the complaining party to prove that any challenged conduct caused probable injury. But as our Court applied the rule, juror testimony or affidavits were admissible to show only overt acts of misconduct, not merely the mental processes or motives of the jurors. *See, e.g., Flores v. Dosher*, 622 S.W.2d 573, 575 (Tex.1981); *Strange v. Treasure City*, 608 S.W.2d 604, 606 (Tex.1980); *Trousdale v. Texas & New Orleans R.R. Co.*, 154 Tex. 231, 276 S.W.2d 242, 243 (1955).

The rule was criticized because of the difficulty in drawing a line between acts and mental processes. As Chief Justice Pope explained, "The line at which thought becomes act is vaporous.... The difficulty comes down to this: speech is an overt act; thought is not; yet speech is thought." Pope, *The Mental Operations of Jurors*, 40 Tex. L.Rev. 849, 853 (1962). Another commentator claimed that Texas jurisprudence allowed "a far wider scope of inquiry into the jury's deliberations than any other state." *See* 1 McCormick & Ray, Texas Law of Evidence § 1612 (Texas Practice 1980).

In 1983, our Court adopted Texas Rule of Civil Evidence 606(b). *See* Tex.R. Civ. Evid. 606(b), 641–642 S.W.2d (Texas Cases) LII (1983); 1 McCormick & Ray, Texas Law of Evidence § 1612 (Texas Practice 1980). The State Bar Liaison Committee on the Rules of Evidence had recommended that we adopt Federal Rule of Evidence 606(b) verbatim. *See* Black, *Article VI: Witnesses*, 20 Hous. L.Rev. 409, 422–23 (1983). The rule as adopted provided:

> Rule 606. Competency of Juror as Witness
>
> (b) Inquiry into validity of verdict or indictment
>
> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent or dissent from the verdict or indictment or concerning his mental process in connection therewith, except that a juror may testify on the question whether any outside influence was improperly brought to bear upon any juror. Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded

from testifying be received for these purposes.

Tex.R. Civ. Evid. 606(b).[2] The rule differs from Federal Rule 606(b) only in that it deletes the federal exception that allows a juror to testify "whether extraneous prejudicial information was improperly brought to the jury's attention." *Compare* Tex.R. Civ. Evid. 606(b) *with* Fed R. Evid. 606(b). The same year the Court amended Rule 327(b) to incorporate the provisions of Rule 606(b) into the procedures for seeking a new trial:

> b. A juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict concerning his mental processes in connection therewith, except that a juror may testify whether any outside influence was improperly brought to bear upon any juror. Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes.

Tex.R. Civ. P. 327(b). Our Court did not explain the significance of its decision to reject an exception for extraneous prejudicial information, leaving scholars to speculate whether the Texas rules are more restrictive than the federal rule. *Compare* Addison, *Conduct Unbecoming a Jury: Rule 606(b)*, 50 Tex. Bar J. 872, 872 (1987) (stating that the Texas rule is more restrictive), *with* Black, *supra*, 20 Hous. L.Rev. at 423 (concluding that the federal exceptions for "extraneous prejudicial information" and "outside influences" are largely redundant).

### III

■ Before we consider the constitutional questions, we first determine if, and to what extent, the rules bar the evidence

---

2. The rule is now codified at Tex.R. Civ. Evid. 606(b), and was amended in 1998 to allow

juror testimony to rebut a claim that a juror was not qualified to serve.

Jackson offered in this case. Golden Eagle argues that Rule 327(b) precludes proof of all jury misconduct except misconduct resulting from outside influences. Both Rule 327(b) and Rule 606(b) state that jurors may not testify about statements or matters occurring during deliberations, but they may testify about outside influences. *See* Tex.R. Civ. P. 327(b); Tex.R. Civ. Evid. 606(b). A number of cases and commentators have concluded that the Texas rules forbid all proof of jury misconduct unless it involves outside influences.[3] Many of these cases rely on a statement in *Weaver v. Westchester Fire Insurance Company:*

> [A] motion for new trial based on jury misconduct must be supported by a juror's affidavit alleging "outside influences" were brought to bear upon the jury.

739 S.W.2d 23, 24 (Tex.1987). However, our statement in *Weaver* was overly broad, because the rules' limitations on affidavits and testimony as grounds for a new trial expressly do not apply to non-jurors. A court may, of course, admit competent evidence of juror misconduct from any other source. *See, e.g., Mayo v. State,* 708 S.W.2d 854, 856 (Tex.Crim.App.1986) (considering testimony of witness contacted by juror); *Fillinger v.. Fuller,* 746 S.W.2d 506, 508 (Tex.App.—Texarkana 1988, no writ) (holding that rules do not require that affidavits be from jurors only); Goode, *supra,* § 606.2 & n. 42. There is no competent non-juror evidence of misconduct here, however. Jackson's attorney's affidavit relates in part to statements made in open court during voir dire; the remainder of the attorney's testimony is objected-to hearsay concerning what the jurors told him another juror said. *See*

*Mitchell v. Southern Pac. Trans. Co.,* 955 S.W.2d 300, 322 (Tex.App.—San Antonio 1997, no writ) (holding non-juror's affidavit about what occurred in jury deliberations was hearsay); *Clancy v. Zale Corp.,* 705 S.W.2d 820, 828 (Tex.App.—Dallas 1986, writ ref'd n.r.e.); *Tenngasco Gas Gathering Co. v. Fischer,* 624 S.W.2d 301, 305 (Tex.App.—Corpus Christi 1981, writ ref'd n.r.e.). While we may consider the record of the voir dire, it alone contains no suggestion of jury misconduct.

We now turn to the juror testimony. Here three jurors testified as to (1) matters alleged to have occurred after the jury retired to begin deliberating the evidence and (2) a conversation alleged to have occurred during a trial break. We consider first the jurors' testimony about events occurring after retiring to begin deliberations. In support of a motion for new trial, Rule 327(a) provides:

> When the ground of a motion for new trial, supported by affidavit, is misconduct of the jury or of the officer in charge of them, or because of any communication made to the jury or that a juror gave an erroneous or incorrect answer on voir dire examination, the court shall hear evidence thereof from the jury or others in open court.

Tex.R. Civ. P. 327(a). Jackson argues that when we harmonize Rules 327(a) and 327(b), the latter does not apply when the purpose of the juror's affidavit is to show that another juror lied on voir dire and concealed bias and prejudice. Thus, Jackson argues that Rule 327(a) permits juror testimony about statements made during deliberations if offered to show that a juror gave an erroneous or incorrect answer on voir dire examination. But, if Jackson's interpretation is correct, and Rule 327(a) is

---

3. *See, e.g., Sanchez v. King,* 932 S.W.2d 177, 183 (Tex.App.—El Paso 1996, no writ); *Welsh v. Welsh,* 905 S.W.2d 615, 618 (Tex.App.—Houston [14th Dist.] 1995, writ denied); *Perry v. Safeco Ins. Co.,* 821 S.W.2d 279, 280 (Tex.App.—Houston [1st Dist .] 1991, writ denied); *Kendall v. Whataburger, Inc.,* 759 S.W.2d 751, 755 (Tex.App.—Houston [1st Dist.] 1988, no

writ); *Texaco, Inc. v. Pennzoil Co.,* 729 S.W.2d 768, 849–50 (Tex.App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.); *Robinson Elec. Supply Co. v. Cadillac Cable Corp.,* 706 S.W.2d 130, 131–32 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.); Addison, 50 Tex. Bar J. at 872.

an exception to Rule 327(b), then the scope of inquiry into jury deliberations may legitimately include not just incorrect answers on voir dire but any "misconduct of the jury", including misconduct occurring during formal deliberations. If so, the 1983 amendments to Rule 327 greatly expanded the scope of inquiry into the jury's deliberations rather than restricting them. Certainly, there is no basis for concluding that the Court intended to expand the scope of inquiry into the jury's deliberations by adopting Rule 327(a) as an exception to Rule 327(b).

Rule 327(b) operates to prohibit jurors from testifying about matters and statements occurring during deliberations. Harmonizing both sections, subsection (b) applies regardless of the grounds alleged for a new trial. Jackson suggests that Rule 327(a)'s provision for juror testimony would be meaningless if Rule 327(b) precludes a juror from testifying about statements made during deliberations. We disagree. Rule 327(b) does not preclude juror testimony about improper contacts with individuals outside the jury, nor juror testimony about matters or statements not "occurring during the course of the jury's deliberations." A juror may testify about jury misconduct provided it does not require delving into deliberations. For example, a juror could testify that another juror improperly viewed the scene of the events giving rise to the litigation. Likewise, a juror could testify about reasons for disqualifying another juror provided the testifying juror's knowledge was gained independent of deliberations. Juror Maxwell, had she been called to testify, could have been questioned about the facts of her prior jury service without violating Rule 327(b).

■ Despite the rules' prohibition against juror testimony about deliberations, both Rule 327(b) and Rule 606(b) allow jurors to testify about outside influences. Jackson argues that we should broadly interpret the exception for outside influences and consider the jurors' testimo-

ny because it falls within the exception in the rules for "outside influences." We have not defined what kind of "outside influence" a juror may testify about. In *Weaver*, our only case on the subject, we gave examples of what is *not* an outside influence. *Weaver v. Westchester Fire Ins. Co.*, 739 S.W.2d 23, 24 (Tex.1987). In that case, a worker's compensation claimant obtained a juror's affidavit claiming that the jury had discussed the failure of certain witnesses to appear and testify and the probability that the claimant lacked hospitalization insurance. *See id.* We concluded that the affidavit was not evidence of an outside influence. *See id.*

Most Texas courts considering the question have held that the rules prevent a juror from testifying that the jury discussed improper matters during deliberation. *See, e.g., Soliz v. Saenz*, 779 S.W.2d 929, 933 (Tex.App.—Corpus Christi 1989, writ denied); *King v. Bauer*, 767 S.W.2d 197, 198 (Tex.App.—Corpus Christi 1989, writ denied); *Baley v. W/W Interests, Inc.*, 754 S.W.2d 313, 316 (Tex.App.—Houston [14th Dist.] 1988, writ denied); *Robinson Elec. Supply Co. v. Cadillac Cable Corp.*, 706 S.W.2d 130, 132 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.); *Clancy v. Zale Corp.*, 705 S.W.2d 820, 828–29 (Tex. App.—Dallas 1986, writ ref'd n.r.e.). We agree. The rules contemplate that an "outside influence" originates from sources other than the jurors themselves. Accordingly, here the accounts that some jurors speculated whether alcohol was involved in the accident and that Jackson may have received a settlement, or that the jurors traded answers on two issues, are all juror statements about matters occurring during their deliberations. They are not evidence of outside influences.

■ Jackson also argues that we should consider Maxwell herself an "outside influence" because she brought prejudices into the jury room. A number of cases have also rejected this argument, holding that the rules preclude evidence from a juror that another juror exhibited bias during

jury deliberations. *See, e.g., United States v. Duzac,* 622 F.2d 911, 913 (5th Cir.1980) (holding that the "proper time to discover such prejudices is when the jury is being selected and peremptory challenges are available to the attorneys"); *Soliz,* 779 S.W.2d at 933 (holding that evidence emanating from inside jury deliberations not admissible to show bias); *Baker Marine Corp. v. Weatherby Eng'g Co.,* 710 S.W.2d 690, 692–93 (Tex.App.—Corpus Christi 1986, no writ) (holding that juror testimony that fellow juror seemed biased during deliberation was inadmissible). Moreover, while failure to disclose bias is a form of juror misconduct that justifies a new trial under the appropriate circumstances, proof of a juror's failure to disclose bias must come from some source other than a fellow juror's testimony about deliberations. *See Durbin v. Dal–Briar Corp.,* 871 S.W.2d 263, 272 (Tex.App.—El Paso 1994, writ denied).

■ In the same vein, Jackson contends that Maxwell was an outside influence because her bias statutorily disqualified her from serving on the jury. *See* TEX. GOV'T CODE § 62.105(4). However, Jackson did not timely raise statutory disqualification as a basis for new trial. *See* TEX.R. CIV. P. 329(b). But even if Jackson had timely raised it, Jackson must depend on proof other than matters prohibited by Rule 327(b) to establish statutory disqualification.

■ Finally, we consider the alleged conversation between Frederick and Maxwell during a trial break. Jackson argues that the conversation should not be considered "deliberations" and therefore barred by Rule 606(b) and Rule 327(b). We agree. The Texas Rules of Civil Procedure use the term "deliberations" as meaning formal jury deliberations—when the jury weighs the evidence to arrive at a verdict. In at least one rule the term is used to refer to the stage of trial after the court has charged the jury but before it has returned a verdict. Rule 287 provides:

The court, during the deliberations of the jury, may proceed with other business or recess from time to time, but shall be deemed open for all purposes connected with the case before the jury.

TEX.R. CIV. P. 287. Clearly, here the rule refers to formal deliberations and not incidental discussions that might occur between jurors during trial.

Other rules use the term "deliberation" to refer to the formal process beginning after the close of evidence and the jury charge, when the jury retires to weigh the evidence to arrive at a verdict. For example, Rule 282 provides that a "jury may either decide a case in court or retire for deliberation." Rule 283 constrains the officer in charge of the jury from revealing "the state of [the jury's] deliberations." If polling the jury reveals a problem with the verdict, or it is otherwise defective or incomplete, Rules 294 and 295 provide for "further deliberations." None of the rules contemplate that the jury may begin deliberating during a trial break. On the contrary, the approved jury instructions direct courts to admonish the jury against informal discussions of the case:

Do not even discuss this case among yourselves until after you have heard all of the evidence, the court's charge, the attorneys' arguments and until I have sent you to the jury room to consider your verdict.

TEX.R. CIV. P. 226a (approved instructions) pt II.

■ A court of appeals adopted an opposing view interpreting the term "deliberations" in Rules 606 and 327(b) to include discussions before the charge was read and formal deliberations had begun:

Any conversation regarding the case occurring between or among jurors is a part of jury deliberations regardless of the time and place where it occurs. To hold otherwise would reinstate the post-trial questioning of jurors under prior law.

*Baley v. W/W Interests, Inc.,* 754 S.W.2d 313, 316 (Tex.App.—Houston [14th Dist.] 1988, writ denied). A number of courts have followed this holding from *Baley* without discussion.[4] This expansive reading, however, is not required by the language of the rules. Thus, we disapprove of the definition of the term "deliberations" in these cases. And contrary to the court of appeals's suggestion in *Baley,* Rule 606(b) and Rule 327(b) were not intended to eliminate post-trial questioning altogether. Juror testimony is still permitted on the issues of juror misconduct, communications to the jury, and erroneous answers on voir dire, provided such testimony does not require delving into deliberations. TEX.R. CIV. P. 327(a), (b).

Consequently, we conclude that Rules 327(b) and 606(b) do not bar Frederick's testimony about his conversation with Maxwell during a trial break. However, because this evidence does not conclusively establish that Maxwell prevaricated or concealed bias during voir dire, we do not agree that the trial court abused its discretion in failing to grant a new trial.

 To warrant a new trial for jury misconduct, the movant must establish (1) that the misconduct occurred, (2) it was material, and (3) probably caused injury. Rule 327 provides that a trial court:

> may grant a new trial if ... the erroneous or incorrect answer on voir dire examination, be material, and if it reasonably appears from the evidence both on the hearing of the motion and the trial of the case and from the record as a whole that injury probably resulted to the complaining party.

TEX.R. CIV. P. 327(a). Whether misconduct occurred and caused injury is a question of fact for the trial court. *See Pharo v. Chambers County,* 922 S.W.2d 945, 948 (Tex.1996). Absent findings to the contrary, we must assume that the trial court made all findings in support of its decision to deny the motion for new trial. *See id.* Consequently, Jackson had the burden to conclusively establish that Maxwell committed jury misconduct, a burden he did not discharge.

 Jackson contends that juror Frederick's accounts of a casual conversation with Maxwell established that she prevaricated on voir dire and concealed her bias. Frederick's affidavit in support of Jackson's motion stated in part:

> At a recess during the trial after the testimony of the witness Mulaney, the juror Barbara Maxwell told me that she had been on a previous jury in which a family was suing for the death of another family member. Her comment was that the jury she was on awarded nothing, and that she did not believe in "awarding money in stuff like that". She also said, "We are the ones that end up paying for it." I reminded her that she had been asked about that by [Jackson's attorney] and she gave no answer.

Frederick elaborated on this incident as a witness called by Jackson at the hearing on the motion:

> Q I believe [your affidavit refers] to something that took place while the case was still being tried; is that correct?
>
> A Yes, sir, it is.
>
> Q Did that take place on a break of the jury?
>
> A Yes, sir, right outside the courtroom.
>
> Q Now, this this—I believe that you told me that you and a female juror both like to drink coffee and you-all were the only coffee drinkers?
>
> A Yes, sir.
>
> Q Is that right?
>
> A That's correct.

---

4. *See, e.g., Mitchell v. Southern Pac. Transp. Co.,* 955 S.W.2d 300, 322 (Tex.App.—San Antonio 1997, no writ); *Durbin v. Dal–Briar Corp.,* 871 S.W.2d 263, 272 (Tex.App.—El Paso 1994, writ denied); *Wilson v. Texas Parks and Wildlife Dept.,* 853 S.W.2d 825, 831 (Tex.App.—Austin 1993), *rev'd. on other grounds,* 886 S.W.2d 259 (Tex.1994).

Q And during this break this female juror made some comments; is that right?

A That's correct, yes.

Q And what was it she said?

A It was during or right after the witness Mulaney, right after his testimony. She made the comment about it being boring. She said, "Of course, the whole thing is boring." And she said, "I don't believe in lawsuits like this." And I said, "Well," I said, "I think you was asked that during voir dire." And she didn't make any comment after that. She didn't answer me one way or the other.

Q Did she in the same conversation mention to you that she had served on a wrongful death jury?

A Yes, she did. She said she had—that someone was killed in an auto accident and the family had sued and she was on the jury and she said, "We didn't award them anything because I don't believe in things like that. I don't believe in lawsuits like that."

Q And you reminded her that she'd been asked that on voir dire?

A Right, right, I reminded her. I said—I think Mr. Smith had asked that very question on voir dire, if anybody did not believe in it to say so; and she made no comment about that.

Q Now, there was one other statement in this affidavit attributed to this juror and that is, "We are the ones that end up paying for it"?

A Yes, sir, she said that.

Q She made that comment at the same time?

A Right.

Jackson contends that Frederick's testimony established that Maxwell prevaricated on voir dire. When Jackson's attorney asked the panel about prior jury service, Maxwell volunteered she had served on juries in a criminal matter and a civil matter involving a death. The attorney asked if the jury had reached a verdict in the civil case, and Maxwell answered "no". The attorney did not ask Maxwell any further questions.

We conclude that Frederick's affidavit and testimony do not conclusively establish that Maxwell failed to answer Jackson's voir dire questions truthfully. The other party to the conversation, Maxwell, did not testify at the new trial hearing nor does the record indicate that anyone called her to testify. It is at least possible that Maxwell misunderstood the voir dire question about whether the jury had reached a verdict in the wrongful death case and thought it meant whether the jury had awarded any damages in the case. There is no other evidence in the record about this conversation or the facts of Maxwell's prior jury service. This evidence does not conclusively establish that Maxwell intentionally answered incorrectly.

 Jackson also contends that Frederick's testimony demonstrates that Maxwell concealed bias during voir dire. If, as Frederick testified, Maxwell said that she did not believe in "things like that" or "lawsuits like that" or in awarding money in "stuff like that" or "things like that", all referring to the wrongful death action, or that she did not believe in "lawsuits like this", referring to the present case, did she mean lawsuits that she considered to be lacking in merit or all personal injury actions? The latter is a reasonable inference, but so is the former. Frederick's testimony, if credible, was inconclusive.

But the trial court may not have considered Frederick's testimony to have been credible. It was certainly hearsay, and while no objection was made to its admission to preclude the trial court from considering it, the trial court was nevertheless free on its own to disregard the testimony.

We conclude that the evidence about discussions prior to formal deliberations does not establish jury misconduct here, and Rules 606(b) and 327(b) prohibit considering the testimony about matters and statements occurring in the course of the

jury's formal deliberations. We turn now to Jackson's constitutional arguments.

## IV

Jackson argues that Rule 327(b) conflicts with the guarantees of the right to a fair and impartial jury trial in Article I, Section 15 and Article V, Section 10 of the Texas Constitution. He also suggests that Rule 327(b) violates federal due process. We disagree with both contentions. The United States Constitution does not guarantee a jury trial in state courts. The Sixth Amendment guarantee of a jury trial applies to the states, but by its terms applies only to criminal prosecutions. The right to a jury trial in civil cases in federal courts is found in the Seventh Amendment, but it has never been extended to the states. *See, e.g., Mayer v. Gary Partners & Co.,* 29 F.3d 330, 333 (7th Cir.1994); *Letendre v.. Fugate,* 701 F.2d 1093, 1094 (4th Cir.1983); *Olesen v. Trust Co. of Chicago,* 245 F.2d 522, 524 (7th Cir.1957). Nonetheless, a state's civil jury system must comport with federal due process. *Cf. Honda Motor Co. v. Oberg,* 512 U.S. 415, 432, 114 S.Ct. 2331, 129 L.Ed.2d 336 (1994) (holding due process requires limitation on jury's discretion to award punitive damages); *Peters v. Kiff,* 407 U.S. 493, 501, 92 S.Ct. 2163, 33 L.Ed.2d 83 (1972) ("[I]f a State chooses, quite apart from constitutional compulsion, to use a grand or petit jury, due process imposes limitations on the composition of that jury.").

In two cases, a Texas court of appeals has considered and rejected federal and state constitutional challenges to Rule 327(b) and Rule 606(b). In *Soliz v. Saenz,* 779 S.W.2d 929, 934 (Tex.App.—Corpus Christi 1989, writ denied), the appellant contended that these rules violate the Due Process Clause of the Fourteenth Amendment and the right to a fair and impartial jury under the Texas Constitution. Noting that the rules provide for a hearing, the court concluded that the need to protect the "jury's delicate deliberative process" warranted the rules' restriction on juror testimony and did not deprive the litigant of a meaningful opportunity to be heard and did not violate due process. *Id.* at 934–35. The court recognized that the rules were adopted in an attempt to promote the " 'purity and efficiency' of the jury system," and therefore did not deprive the appellants of a fair and impartial trial by jury. *Id.* at 935. Likewise, in *King v. Bauer,* 767 S.W.2d 197 (Tex. App.—Corpus Christi 1989, writ denied), the court held that the rules did not violate the open courts and due course of law guarantees afforded by the Texas Constitution, holding that the mere fact that the rules pose procedural difficulties to prove jury misconduct did not deprive the litigant of a remedy by due course of law. *King,* 767 S.W.2d at 199.

The United States Supreme Court has extensively discussed the constitutionality of Federal Rule of Evidence 606(b) in only one case, *Tanner v. United States,* 483 U.S. 107, 107 S.Ct. 2739, 97 L.Ed.2d 90 (1987). The two defendants in that case sought a hearing on jury misconduct based on juror affidavits that jurors were severely impaired during trial by alcohol and drug abuse. The defendants claimed that Federal Rule 606(b) deprived them of their Sixth Amendment right to a fair jury trial. The Court rejected the claim, noting the substantial policy considerations that support common-law rules against juror impeachment of verdicts in general, and Federal Rule 606(b) in particular. The Court went so far as to suggest that the jury system could not survive if courts permitted extensive post-verdict investigations into juries' internal deliberative processes. *Id.* at 120.

Important to the Supreme Court's analysis in *Tanner* is its emphasis on the protection provided by other aspects of federal trial procedure. The Court noted that the suitability of a potential juror can be tested during voir dire, "jurors may report inappropriate behavior to the court *before* they render a verdict," and verdicts may

be impeached post-trial by non-juror evidence. *Id.* at 127, 107 S.Ct. 2739.

Although a federal Sixth Amendment case, we believe that the approach taken in *Tanner* is appropriate to our analysis under the Texas Constitution. Rules 606(b) and 327(b) cannot be viewed in isolation from other trial procedures designed to further the Constitution's goal of a fair and impartial jury. Our system provides other procedures to protect against undesirable jurors. Litigants may question potential jurors on voir dire to detect potential bias and either challenge for cause or exercise peremptory challenges. *See Babcock v. Northwest Mem'l Hosp.*, 767 S.W.2d 705, 708–09 (Tex.1989).

Rules 327(b) and 606(b) expressly apply only to post-verdict juror testimony. If a problem develops during trial, the court may question the jury by voir dire and take corrective measures such as instructing the jury, dismissing particular jurors, or declaring a mistrial. *See, e.g., Doucet v. Owens–Corning Fiberglas Corp.*, 966 S.W.2d 161, 165 (Tex.App.—Beaumont 1998, pet. denied). When the jury returns the verdict, the court may also poll the individual jurors. *See Branham v. Brown*, 925 S.W.2d 365, 368 (Tex.App.—Houston [1st Dist.] 1996, no writ). Finally, Texas rules concerning attorneys' post-trial juror contact are more permissive than federal court rules. *See Commission For Lawyer Discipline v. Benton*, 980 S.W.2d 425, 433 (Tex.1998) (noting that Texas law permit attorneys to respectfully contact jurors post trial).

We conclude that Rules 327(b) and 606(b) do not deprive the litigants of a fair trial under the Texas Constitution, nor do they fail to afford litigants due process. The rules are designed to balance concerns about the threat of jury misconduct with the threat from post-verdict juror investigation and impeachment of verdicts.

V

The trial court did not abuse its discretion by denying a new trial on grounds of jury misconduct because Jackson did not present competent evidence. Accordingly, we reverse the judgment of the court of appeals and remand the case to that court to consider Jackson's other issues that it did not reach.

Justice HECHT filed a concurring opinion, in which Justice OWEN joined.

Justice ABBOTT filed a concurring opinion.

Justice HECHT, joined by Justice OWEN, concurring.

I join fully in the Court's opinion and write only to comment on the scope of Rule 327(b) of the Texas Rules of Civil Procedure and Rule 606(b) of the Texas Rules of Evidence. I agree with the Court that by the phrase, "the jury's deliberations", the rules refer to the time after the case is submitted to the jury and not before. I cannot agree with JUSTICE ABBOTT that a jury begins its deliberations, within the meaning of these rules, from the moment the venire is sworn or at any time before it is charged. Hence, I join the Court's conclusion that neither rule precludes consideration of one juror's testimony concerning his conversation with another juror during a break in the trial before the case was submitted to the jury. But I believe, for reasons that this case illustrates, that the Court's Advisory Committee should consider whether the rules should be amended to apply not just to jury deliberations, as Rule 606(b) does, or "the course of deliberations", which should include intermissions in those deliberations, as Rule 327(b) does, but to all post-submission evidence of intra-jury statements and actions (not outside influences) that occurred after the jury was seated and sworn.

It is one thing to permit a juror to call another juror's misconduct to the court's attention prior to submission of the case to the jury. The trial court may be able to resolve the matter without a mistrial, per-

haps by an admonition to the jury, by excusing a juror, or by replacing a juror with an alternate. But if the assertion of misconduct does not come until after the case is submitted, the opportunity to remedy it is gone. More importantly, to allow one juror to attack another juror's presubmission conduct is too great an encouragement of post-trial trials of the jury. The accusing juror's motives may be more suspect than they would have been during the trial. In this case, for example, Frederick did not join in the verdict. If he thought Maxwell's hallway comment showed that she was biased or that she had not been forthcoming during voir dire, why did he not call the matter to the court's attention at the time instead of waiting until he knew that he and she disagreed on the result in the case? Has his disagreement with the verdict colored his view of what Maxwell said to him over coffee? Frederick could answer, no doubt, and Maxwell could give her side of it, but I question whether jurors should be put on trial after deliberations have begun. To examine and cross-examine jurors during deliberations or after a verdict is rendered concerning any misconduct that allegedly occurred during the trial, except as to outside influences, is a significant burden on citizens who give of their time to serve as jurors with little benefit to the process. Jurors come to decide disputes, not to be drawn into them.

Justice ABBOTT, concurring.

I concur with the Court's judgment. I write separately because I disagree with the Court's conclusion that the conversation between Frederick and Maxwell is not protected from disclosure by Texas Rule of Civil Procedure 327(b) and Texas Rule of Evidence 606(b).

Rule 327(b) provides:

A juror may not testify as to any matter or statement occurring during the course of the jury's deliberations *or to the effect of anything upon his or any other juror's mind or emotions as influ-encing him to assent to or dissent from the verdict concerning his mental processes in connection therewith,* except that a juror may testify whether any outside influence was improperly brought to bear upon any juror.

Tex.R. Civ. P. 327(b) (emphasis added).

Texas Rule of Evidence 606(b) is virtually identical. It provides:

[A] juror may not testify as to any matter or statement occurring during the jury's deliberations, or to *the effect of anything on any juror's mind or emotions or mental processes, as influencing any juror's assent to or dissent from the verdict* or indictment. Nor may a juror's affidavit or any statement by a juror concerning any matter about which the juror would be precluded from testifying be admitted in evidence for any of these purposes. However, a juror may testify: (1) whether any outside influence was improperly brought to bear upon any juror; or (2) to rebut a claim that the juror was not qualified to serve.

Tex.R. Evid. 606(b) (emphasis added).

These provisions declare that only two categories of information are subject to disclosure: (1) whether an outside influence was brought to bear on a juror, and (2) whether a juror was unqualified to serve. The evident intent of the rules is to exclude from compelled disclosure all other influences on a juror's decision-making process. The scope of the rules' disclosure prohibition is broad and nonexclusive; at a minimum, it includes *"the effect of anything on any juror's mind or emotions or mental processes, as influencing any juror's assent to or dissent from the verdict"*...except to the extent this would involve an outside influence. Maxwell's prejury-charge comments to another juror to the effect that she did not believe in "awarding money in stuff like that" and that "we are the ones who end up paying for it" clearly reflect what is on her mind, her emotions, and her mental processes.

Her comments, and the thoughts and feelings they reflect, may or may not have had an impact on her decision...or on Frederick's decision...in this case. Whether they did is something that should never be looked into, as mandated by Texas Rule of Civil Procedure 327(b) and Texas Rule of Evidence 606(b).

For similar reasons, I disagree with the Court's narrow interpretation of the word "deliberations." It blinks reality to believe that juror deliberations begin only after the jury charge is read to them. The normal human reaction is to process information as it is received during the course of a trial. From the moment that voir dire begins through the time that a final verdict is reached, jurors are thinking about...and, hence, deliberating about...all that they have heard and seen. Similarly, it is unrealistic to believe that jurors who must spend eight to ten hours a day together, sometimes for weeks or months, will not make a brief, passing comment to one another about the case on trial. Such comments are part of the deliberative process and should be cloaked with the protection from disclosure provided by Texas Rule of Civil Procedure 327(b) and Texas Rule of Evidence 606(b).

The Court notes the admonitory instruction, approved by this Court, that provides:

> Do not even discuss this case among yourselves until after you have heard all of the evidence, the court's charge, the attorneys' arguments and until I have sent you to the jury room to consider your verdict.

Order of the Supreme Court of Texas of July 20, 1996, *amended* January 1, 1971, February 1, 1973, December 5, 1983; *see also* TEX.R. CIV. P. 226a. This, of course, instructs jurors about what they should not do, but it is not a directive establishing what constitutes "deliberations" for purposes of rules 327(b) and 606(b). The instruction certainly falls short of defining "deliberations" as only those discussions that occur after the jury is charged. The same conclusion applies to each of the other rules cited by the Court...Texas Rules of Civil Procedure 282, 283, and 287.

Contrary to the Court, I agree with the court of appeal's statement in *Baley v. W/W Interests, Inc.* that "[a]ny conversation regarding the case occurring between or among jurors is a part of jury deliberations regardless of the time and place where it occurs." 754 S.W.2d 313, 316 (Tex.App—Houston [14th Dist.] 1988, writ denied). To the extent that statement is not the law, jurors who sacrifice time at their jobs and with their families just to spend it sitting through sometimes seemingly endless jury trials will be subject to post-trial inquiry by the losing party to find out if just one juror may have said something about the case prior to the court's charge. I believe that opening the door to such inquiries violates the spirit of our jury system and the letter of Texas Rule of Civil Procedure 327(b) and Texas Rule of Evidence 606(b). Accordingly, I disagree with the Court's conclusion on this issue.