**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-16-00334-CV**

_____

**IN RE VICTOR ATUN**

**Original Proceeding**
**418th District Court of Montgomery County, Texas**
**Trial Cause No. 13-07-07301-CV**

**MEMORANDUM OPINION**

This is a mandamus proceeding wherein relator, Victor Atun (Atun), contends the trial court abused its discretion by setting aside the jury's verdict and granting the motion for new trial filed by the real party in interest, Julie Beth Yelin (Yelin), in a suit to modify the parent-child relationship. Yelin's motion for new trial alleged that a new trial was required because of juror misconduct.

In the hearing on Yelin's motion for a new trial, one juror, V.J., testified that the verdict was a 10-2 verdict, that she was one of two holdouts, and that she spoke to the amicus attorney after the verdict was rendered, and she also called Yelin's office and left a voicemail and then spoke to Yelin the next day. V.J. testified

1

about the deliberations of the jury, the votes that were taken, and also that another juror used his cell phone to look up some information about locations of martial arts' studios.

According to V.J., during voir dire the panel was instructed that the jurors were "not allowed to look up any information regarding the parties or the case itself or anything that would influence our decision[,]" and that once the jury was impaneled the jurors were instructed not to use their cell phones, internet, and social media during the trial or in regards to the case when they left the trial at the end of each day. V.J. testified that the written jury charge prohibited the use of cell phones, internet, or social media during jury deliberations.[1] V.J. explained that one

---

[1] The trial court verbally instructed the jury prior to deliberations as follows, in part:

> [I]n arriving at your answers, consider only the evidence introduced here under oath and such exhibits, if any, as have been introduced for your consideration under the rulings of the Court; that is, what you have seen and heard in this courtroom together with the law as given you by the Court. In your deliberations you will not consider or discuss anything that is not represented by the evidence in this case.

We note that in the five volumes of the reporter's record for the underlying trial we find no verbal instruction from the trial court instructing the jurors not to do internet research. The clerk's record is not included in this mandamus record. The Texas Pattern Jury Charges: Family & Probate (2016) (hereinafter P.J.C.) contains some admonitory instructions that instruct jurors about certain conduct, including without limitation an instruction relating to internet research and cell

2

of the jurors "looked up the type of karate class that [one of the children] was attending here in The Woodlands, and that there were plenty of facilities in Fort Bend that [the child] could complete his black belt in, and [the juror] had looked them up[,]" and that juror shared with the panel that "there were several facilities that practice the same type of karate that [the child] was practicing now." V.J. testified that she saw the juror use his phone during deliberations and that V.J. believed that the juror's statement materially influenced other jurors and persuaded a third holdout juror to change his mind, resulting in a change from a 9-3 vote count to a 10-2 vote count "within minutes."[2] V.J. agreed that although she stated

phone use. *See* Comm. on Pattern Jury Charges, State Bar of Tex., *Texas Pattern Jury Charges: Family & Probate* (2016). For example, P.J.C. 200.1 ("Instructions to Jury Panel before Voir Dire Examination") includes an instruction to the venire to turn cell phones off; P.J.C. 200.2 ("Instructions to Jury after Jury Selection") includes instructions to turn cell phones off and tells the jurors that they should not independently investigate the case by trying to find out more about the case on the Internet; and, P.J.C. 200.3 ("Charge of the Court") includes instructions that state the jurors should not use cell phones or electronic devices during deliberations for any reason and should not do any independent investigation or research about the case or conduct any research.

[2] A substantial portion of the questions to V.J. from Yelin's attorney and V.J.'s testimony in response thereto addressed the jury's deliberations, the count of the votes at various times during the deliberations, and V.J.'s perceptions regarding why and how the vote count changed. We note that when Yelin's counsel questioned V.J. regarding the vote count during deliberations, Atun's counsel objected to the relevance of such testimony and also on the grounds that such question was "in violation of Texas Rules of Evidence 606(b) that states that upon inquiring into the validity of a verdict, a juror may not testify to any matter or statement occurring during the jury's deliberation other than that that influenced."

3

in her affidavit admitted into evidence that outside influence (the juror's internet research) during deliberations probably caused harm to Yelin, V.J. did not choose all of the wording in the affidavit.

Juror J.G. testified at the hearing that he recalled the trial court instructing the venire members not to use cell phones, and the trial court after jury selection warning the jurors regarding "the use of any outside influence including cellular devices or any other forms of social media or anything like that." According to J.G., the written instructions in the jury charge from the trial court also included instructions not to use the internet, cell phones, or social media in regards to the trial and not to use cell phones during deliberations. J.G. testified that the original vote count was 11-1 in favor of Atun having custody but during most of the deliberations the vote count was 8-4.[3] According to J.G., during deliberations Juror A.M. looked up information on his phone regarding locations of karate schools in the Fort Bend County area and Sugar Land in response to one of J.G.'s questions

---

The trial court overruled the objections. Atun's counsel also objected to the relevancy of V.J.'s testimony regarding the court's instructions to the panel during voir dire, and Atun's counsel argued that the law "is very clear that a party can only inquire as to whether an outside influence affected the deliberations[,]" and the trial court overruled the objections.

[3] At the beginning of Yelin's counsel's questioning of J.G. regarding the vote counts during deliberations, Atun's counsel objected again on the basis that "this violates Rule 606(b) and is not relevant." The trial court overruled the objection.

and A.M. answered J.G.'s question. J.G. testified that he did not know whether A.M. was doing internet research on his phone but J.G. did know "that [A.M.] looked something up in reference to [J.G.'s] question." J.G. explained that J.G. was one of the two holdout jurors in the 10-2 verdict and that A.M.'s statement which A.M. made after scrolling on A.M's phone did not influence J.G. J.G. testified that about a week after the trial he was called and asked if anyone on the jury used their phones during deliberations, and J.G. stated what he recalled about the juror who was using his phone. According to J.G., the vote changed to the 10-2 vote count within an hour after A.M. looked at his phone and responded to J.G.'s question.

Juror K.M. testified at the hearing that she did not recall anyone talking about internet research during deliberations but that she recalled A.M. talking generally about karate classes with a group of jurors but K.M. did not hear A.M. make a clear statement. According to K.M., about "five or ten minutes[]" after the statement was made, the jury vote changed to the vote that resulted in the verdict.

Juror C.L. testified that he remembers A.M conducting internet research on "karate schools in the Fort Bend, Sugar Land area[]" and that A.M. announced that he found karate classes in the area of where the father lived. C.L. testified that although he changed his vote after A.M. did his research, C.L. changed his vote

5

after reconsidering all the evidence and that A.M. never tried to one-on-one influence him in any way to sway his vote.

Juror A.M. also testified at the hearing. According to A.M., during deliberations he used his cell phone to conduct a Google search to look up information "to see if there was a location for the [martial] arts facility that the young man attends in the area where his father lives." A.M. testified that he did not find a specific academy in Sugar Land that had the same style of martial arts, but that he "told the jurors that . . . like many other academies as is the one my daughter attends, that they have multiple facilities all over town and that they shouldn't have a problem finding a place where they could do his [martial] arts." According to A.M., he told the other jurors he believed the father would have the responsibility of finding a place for the child to continue his martial arts. A.M. denied that his purpose in conducting the online research during deliberations was to sway the vote of any "one particular" juror or to make any holdout juror feel better about voting for Atun. When A.M. was asked by Atun's counsel if he believed his statement to the other jury members was material in any way to the decision making in the room, Yelin's counsel objected on the basis of relevancy and that it violated "procedure 327, Rule of Evidence 11, 606([b]) as to the state of mind of other jurors and to what they personally thought went into their feelings as

6

relates to their voting." The trial court sustained the objection. A.M. testified that he "was not told that [he] could not use [his] phone [during deliberations] whatsoever[,]" but that he was told he was "not supposed to have third-party influence[]" and that he knew he "was not supposed to conduct research regarding any of the parties involved or any of the attorneys involved."

The trial court explained on the record that the motion for new trial was granted due to juror misconduct. The trial court explained the basis for its ruling as follows:

> . . . I don't want you to feel like your time was wasted; however, I can tell you that doing any type of internet research of any kind that is related to the case and discussing it during deliberations is bringing information into the jury room which is a sacred, closed-off place, and the only information that the jury can consider is the evidence that was admitted in the courtroom. Okay. It's unfortunate that this will have to be tried again, but I don't want y'all to go away thinking that your time wasn't valuable or that it wasn't useful; but I'm left with no choice, under the terms of the law. I can tell you it is not my desire to retry this case either. But the law is clear and this is what will have to be done.

After reviewing the petition, the response, and the appendices, we conclude this record does not support the granting of a new trial under Rule 327(a) of the Texas Rules of Civil Procedure, and the evidence at the hearing violated Rule 327(b) and Texas Rule of Evidence 606 because a juror "may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the

7

effect of anything upon his or any other juror's mind or emotions . . ." *See* Tex. R. Civ. P. 327(a)-(b); *Golden Eagle Archery, Inc. v. Jackson*, 24 S.W.3d 362, 369-72 (Tex. 2000) (under Rule 327(a) the movant must establish that the misconduct occurred, it was material, and probably caused injury; Rule 327(b) allows a juror to testify about whether any outside influence was improperly brought to bear upon any juror, but it does not allow jurors to discuss matters or statements that were made by the jurors during deliberations); *Brandt v. Surber*, 194 S.W.3d 108, 134 (Tex. App.—Corpus Christi 2006, pet. denied) (juror's affidavit that stated other jurors discussed newspaper articles during deliberations did not constitute evidence of an outside influence, and the affidavit therefore contained incompetent evidence of juror misconduct under Rule 327(b)). The mandamus record demonstrates that the trial court failed to articulate a reasonably specific and valid reason for granting a new trial that is supported by the record and the applicable law. *See In re United Scaffolding, Inc.*, 377 S.W.3d 685, 688-89 (Tex. 2012). We conditionally grant Atun's petition for writ of mandamus. We are confident that the trial court will vacate its order granting Yelin's motion for new trial and enter judgment on the jury's verdict. The writ will issue only if the trial court fails to comply.

PETITION CONDITIONALLY GRANTED.

PER CURIAM

Submitted on October 19, 2016
Opinion Delivered December 15, 2016

Before Kreger, Horton, and Johnson, JJ.