**Opinion issued November 21, 2024**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-24-00512-CV

———————————

## IN RE NISSAN NORTH AMERICA, INC. AND MOSSY NISSAN (TX), INC., Relators

---

## Original Proceeding on Petition for Writ of Mandamus

---

## O P I N I O N

In this original proceeding, relators Nissan North America, Inc. and Mossy

Nissan (TX), Inc. (collectively Nissan), seek mandamus relief from the trial court's

order granting a new trial based on juror misconduct.[1] In three issues, Nissan

---

[1] The underlying case is *Deana A. Rios, Individually, as Independent Administrator of the Estate of Adam A. Rios, Deceased, as Next Friend of A.R. and E.R., Minor Children, and on behalf of All Wrongful Death Beneficiaries of Adam Rios v. Mossy Nissan (TX), Inc. and Nissan North America, Inc.*, Cause Number 2022-28405,

maintains that the trial court's order constitutes a clear abuse of discretion and warrants mandamus relief.[2]

We agree and conditionally grant relief.

## Background

This is a products liability case. Adam Rios sustained substantial personal injuries, and later died, after his truck, a 2020 Nissan Titan XD Crew Pickup Truck, caught fire while he was driving. His wife, Deana A. Rios, individually and on behalf of all beneficiaries of her husband's estate (collectively Rios), sued Nissan North America, Inc., the manufacturer of the truck, and Mossy Nissan (TX), Inc., the dealership that sold the truck, for strict products liability, negligence, gross negligence, wrongful death, and survivorship. Rios contended that the fire, and her husband's subsequent death, was caused by a defect in the truck's Engine Gas Ignition (EGI) wire harness. After a three-week trial, the jury returned an 11-1 verdict in favor of Nissan.

The day after the jury returned its verdict, Juror 31, who sat on the panel and was the sole juror who voted against Nissan, texted the trial court's bailiff to report

---

pending in the 61st District Court of Harris County, Texas, the Honorable Fredericka Phillips presiding.

[2] Real parties in interest are Deana A. Rios, Individually, as Independent Administrator of the Estate of Adam A. Rios, Deceased, as Next Friend of A.R. and E.R., Minor Children, and on behalf of All Wrongful Death Beneficiaries of Adam Rios.

what she believed to be improper conduct by a fellow juror, Juror 24. Juror 31 informed the bailiff that "another juror had already made a decision about the case on the first day." The trial court then held a hearing. It informed the parties of Juror 31's statement and instructed them to conduct their own investigation if they so wished.

Thereafter, the trial court rendered a take-nothing final judgment in accordance with the jury's verdict. Rios subsequently moved for a new trial. Rios alleged that Juror 24 committed misconduct both before and during the jury's formal deliberations. And that Juror 24 and another juror were dishonest during voir dire. According to Rios, these incidents, combined with Nissan's violation of the trial court's limine orders during closing argument, resulted in cumulative error warranting a new trial.[3]

In support of her motion for new trial, Rios attached the declarations of two jurors: Jurors 31 and 33.

Juror 31, the sole juror who voted in favor of Rios, stated in her declaration that:

> 3.    [Juror 24] indicated that he had made up his mind before hearing all the evidence when he specifically stated, "I made up my mind

---

[3]    Rios also contended that a new trial was warranted because the jury verdict was against the great weight and preponderance of the evidence. However, factual insufficiency of the evidence was not one of the grounds on which the trial court granted a new trial.

3

on day 1." He advocated in favor of Defendant Nissan North America. And he later proceeded to vote in Nissan's favor.

4. [Juror 24] also stated that the Rios Family had a lawsuit against Memorial Hermann [Hospital] and would get money from that lawsuit. We were never presented with evidence of the Rios Family having a lawsuit against or receiving money from Memorial Hermann during trial. [Juror 24] did not state where he had obtained this information. After [Juror 24] made this statement, several jurors changed their votes from "yes" to liability questions to "no" on liability questions.

Juror 33 stated in her declaration that:

3. During the second week of the three[-]week trial, at lunch with other jurors present, [Juror 24] openly expressed criticism of evidence presented by the Rios Family about how the subject fire started and traveled on the Nissan Titan. [Juror 24] stated, "I know about trucks and this would not have happened." Given the substance and tone of [Juror 24]'s comment, it was clear to me that he had already made up his mind in favor of Nissan North America before hearing all the evidence.

4. Late Friday afternoon toward the end of deliberations, [Juror 24] stated to all jurors that the Rios Family also had a lawsuit against Memorial Hermann and would get money from that lawsuit. We were never presented with evidence of the Rios Family having a lawsuit against Memorial Hermann during trial. After [Juror 24] made this statement, another vote was taken, and several jurors changed their votes from "yes" to liability questions in favor of the Rios Family to "no" on liability questions in favor of Nissan North America.

Jurors 31 and 33 also both testified at the hearing on the motion for new trial.

Juror 31 testified in her affidavit and at trial that Juror 24 indicated that he had made up his mind on day one and advocated for Nissan during deliberations. She further testified that Juror 24 stated that the Rios family had a lawsuit against Memorial

4

Hermann and that, after Juror 24 made this statement during deliberations, several jurors changed their votes from yes to no on liability questions.

Juror 31 additionally testified that Juror 24 stated that he had driven by the golf course where the fire happened, and he knew "that the driveway leading up to it would not have made one of the witnesses' testimony valuable in this case." Juror 31 confirmed that each of the above statements was made by Juror 24 *during* deliberations, except she also heard Juror 24 "say under his breath . . . I've made up my mind" before deliberations began, in addition to during deliberations.

Juror 33 further testified in her declaration and at the hearing that, during deliberations, Juror 24 informed the other jurors that the Rios family had a lawsuit against Memorial Hermann. According to Juror 33, the feeling among the jurors after this statement was made was that the Rios family would "get money from somewhere else." Juror 24 did not indicate where he obtained that information, and Juror 33 further testified that immediately after this statement, some jurors changed their votes.

Juror 33's remaining testimony concerned events occurring during the trial and before deliberations began. Specifically, Juror 33 testified that during the trial and in front of the other jurors, Juror 24 expressed criticism of Rios's evidence and stated, based on his knowledge of trucks, he did not think this would happen. She

5

testified that Juror 24 presented himself as someone having "special knowledge" of trucks, and that he had the "attention" of the other jurors.

In response, Nissan called Juror 24 to testify by telephone. He testified that he did not recall making any statements about the evidence to other jurors prior to deliberations. He clarified that he had driven by the accident scene "pretty much five days a week every week of the year," because "[t]hat's actually the road that [he uses to] go home." He further testified that he did not recall making a statement about another lawsuit against Memorial Hermann, but recalled statements made in closing that the medical costs had "already been paid." Finally, Juror 24 admitted that he made a statement to other jurors that he had made up his mind on day one, i.e., during opening statements. But he explained that he had not "totally made up [his] mind," and still listened to all the evidence throughout the trial. Juror 24 then detailed the evidence that he relied on to ultimately conclude that the alleged defect did not cause the truck fire.

### The Trial Court Abused Its Discretion by Granting a New Trial

The trial court granted Rios's motion for new trial based on (1) juror misconduct and (2) cumulative error resulting from Nissan's prejudicial use of an exhibit during closing argument combined with alleged dishonesty during voir dire

by Jurors 24 and 46. In its first and second issues, Nissan argues that this constitutes a clear abuse of discretion.[4] We agree.

## A. Standard of Review

Mandamus is an extraordinary remedy that will issue only when (1) a trial court clearly abuses its discretion and (2) the relator lacks an adequate remedy by appeal. *In re Kappmeyer*, 668 S.W.3d 651, 654 (Tex. 2023) (orig. proceeding). "A trial court clearly abuses its discretion if it reaches a decision so arbitrary and unreasonable as to constitute a clear and prejudicial error of law." *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992) (orig. proceeding).

The Supreme Court of Texas has held that an appellate court may conduct a merits-based mandamus review of a trial court's articulated reasons for granting a new trial. *See In re Toyota Motor Sales, U.S.A., Inc.*, 407 S.W.3d 746, 758 (Tex. 2013) (orig. proceeding). A writ of mandamus shall issue to correct a clear abuse of discretion committed by a trial court in granting a new trial. *Id.* at 762. A trial court does not abuse its discretion so long as its stated reason for granting a new trial is (1) legally appropriate and (2) specific enough to indicate that the trial court derived

---

[4] In its third issue, Nissan argues that that the trial court abused its discretion by refusing Nissan an adequate opportunity to procure evidence, present testimony, and make argument, in violation of Nissan's due process rights. Because we agree that neither reason articulated by the trial court in support of its new trial order is supported by the record, we do not address Nissan's third issue. *See* TEX. R. APP. P. 47.1.

the reasons from the particular facts and circumstances of the case at hand. *Id.* at 756–57 (citing *In re United Scaffolding, Inc.*, 377 S.W.3d 685, 688–89 (Tex. 2012) (orig. proceeding)).

But even if a new trial order conforms with these procedural requirements, its order "cannot stand" under Texas law when the "trial court's articulated reasons are not supported by the underlying record." *Id.* at 758.

Here, the trial court's order cites juror misconduct and cumulative error as its bases for granting a new trial. Both juror misconduct and cumulative error, if established, are legally proper reasons for granting a new trial. *See id.* at 759; *Haynes v. Union Pac. R.R. Co.*, 598 S.W.3d 335, 357 (Tex. App.—Houston [1st Dist.] 2020, pet. dism'd). Thus, the order complies with the first requirement. *See Toyota*, 407 S.W.3d at 759.

The trial court's 19-page order also satisfies the second requirement, specificity. *See id.* It recites, in detail, the specific facts and circumstances of the case that led the trial court to conclude that misconduct occurred and that this misconduct, either standing alone or in conjunction with other purported errors, warranted a new trial. It is clear the trial court did not simply "parrot a pro forma template" in drafting its order. *See id.* at 757.

However, "[s]imply articulating understandable, reasonably specific, and legally appropriate reasons is not enough; the reasons must be valid and correct." *Id.*

8

Having undertaken our own "cumbersome review" of the record, we conclude that the record does not support the new trial order. *Id*. at 759–60. We will discuss each ground in turn below.

## B. Juror Misconduct

Texas Rule of Civil Procedure 327(a) provides that:

> When the ground of a motion for new trial, supported by affidavit, is misconduct of the jury . . . the court shall hear evidence thereof from the jury or others in open court, and may grant a new trial if such misconduct proved . . . be material, and if it reasonably appears from the evidence both on the hearing of the motion and the trial of the case and from the record as a whole that injury probably resulted to the complaining party.

TEX. R. CIV. P. 327(a). Thus, "[t]o warrant a new trial for jury misconduct, the movant must establish (1) that the misconduct occurred, (2) it was material, and (3) probably caused injury." *Golden Eagle Archery, Inc. v. Jackson*, 24 S.W.3d 362, 372 (Tex. 2000). "The complaining party has the burden to prove all three elements before a new trial can be granted." *In re Whataburger Rests. LP*, 429 S.W.3d 597, 599 (Tex. 2014) (orig. proceeding) (quoting *Redinger v. Living, Inc.*, 689 S.W.2d 415, 419 (Tex. 1985)). Whether misconduct occurred and caused injury is a question of fact. *Golden Eagle Archery*, 24 S.W.3d at 372 (citing *Pharo v. Chambers Cnty.*, 922 S.W.2d 945, 948 (Tex. 1996)).

As evidence supporting its finding on the first element—juror misconduct— the trial court considered, in essence, to two general categories of conduct by Juror

24: (1) conduct that occurred *before* deliberations and (2) conduct that occurred *during* deliberations. This distinction is important because, as discussed in more detail below, the Texas Rules of Civil Procedure and the Texas Rules of Evidence prohibit jurors from later testifying about matters and statements that occurred during the course of their deliberations. *See* TEX. R. CIV. P. 327(b); TEX. R. EVID. 606(b).

We thus initially consider Juror 24's conduct during the jury's deliberations that was found by the trial court to constitute misconduct.

### 1. Conduct During Deliberations

Based on the testimony of Jurors 31 and 33, the trial court found that "[o]nce deliberations began, Juror 24 told the other jurors that the Rios family had a suit pending against Memorial Hermann," and expressly stated or implied that "as a result of that lawsuit, the Rios family would get money." The trial court found that Juror 24 made this statement in an attempt to persuade other jurors to vote in favor of Nissan, that the basis of Juror 24's statement did not come from evidence adduced at trial but from an "outside influence," and that Juror 24's statement had the intended effect—shortly after he made this statement, the jury's vote went from 6-6 to 11-1 in favor of Nissan.

The trial court also found that Juror 24 "drove by the scene of the fire every day during trial (before and during deliberations) and discussed information he learned from outside of the trial with other jurors."[5]

Because this alleged conduct occurred during the jury's deliberations, we must consider whether the applicable rules bar consideration of this evidence. *See Golden Eagle Archery*, 24 S.W.3d at 368–69.

a. *Applicable Law*

The Supreme Court of Texas has balanced the interest in safeguarding a fair trial before an impartial tribunal against several policy reasons why losing parties should not be allowed to conduct unfettered investigations into the jury's deliberations to try to prove alleged juror misconduct. *See id.* at 366–69; *see also* TEX. R. EVID. 606; TEX. R. CIV. P. 327. These reasons include:

(1) Jury deliberations must be kept private to encourage jurors to discuss the case candidly, without fear that their deliberations later will be held up to public scrutiny.

(2) The jurors need to be protected from post-trial harassment or tampering. Jury service will be less attractive if the litigants can harass a juror after trial, call a juror to testify about jury deliberations, and make juror deliberations public.

(3) A disgruntled juror whose view did not prevail in the jury room may want to seek vindication by providing testimony about jury deliberations in an effort to prove a basis for overturning the

---

[5] Although the trial court included this finding in the section appearing to relate to pre-deliberation conduct, as discussed in detail below, the record reflects that the "information he learned from outside of the trial" was communicated to the jury during deliberations. Therefore, we consider it here.

11

verdict—a significant concern in Texas civil trials, in which the verdict may be less than unanimous.

(4)     A need exists for finality, and litigation must end at some point if the public is to have any confidence in judgments.

*See Golden Eagle Archery*, 24 S.W.3d at 367.

To that end, Rule 327(b) provides that:

A juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict concerning his mental processes in connection therewith, except that a juror may testify whether any outside influence was improperly brought to bear upon any juror. Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes.

TEX. R. CIV. P. 327(b).

Texas Rule of Evidence 606(b) similarly limits a juror's ability to testify as a witness:

(b) **During an Inquiry into the Validity of a Verdict or Indictment.**

(1) ***Prohibited Testimony or Other Evidence.*** During an inquiry into the validity of a verdict or indictment, a juror may not testify about any statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict or indictment. The court may not receive a juror's affidavit or evidence of a juror's statement on these matters.

(2) ***Exceptions.*** A juror may testify:

(A) about whether an outside influence was improperly brought to bear on any juror; or

(B) to rebut a claim that the juror was not qualified to serve.

TEX. R. EVID. 606(b). Rule 327(b) and Rule 606(b) both prohibit jurors from testifying about statements or matters occurring during jury deliberations unless such testimony is about an outside influence improperly brought to bear on a juror. *See id.*; TEX. R. CIV. P. 327(b).

Interpreting these rules, the Texas Supreme Court has held that "an 'outside influence' originates from sources other than the jurors themselves" and, therefore, the rules prohibit "a juror from testifying that the jury discussed improper matters during deliberations." *Golden Eagle Archery*, 24 S.W.3d at 370. Thus, the court in *Golden Eagle Archery* held that the evidence relied upon by the plaintiff in support of the motion for new trial—which included juror testimony that another juror stated that "the plaintiff had probably already gotten a big settlement" and therefore "did not need any more money out of this case"—were "all juror statements about matters occurring during their deliberations. They are not evidence of outside influences." *Id.* at 366, 370.

Our sister courts have similarly held an outside influence "must emanate from *outside* the jury and its deliberations." *Soliz v. Saenz*, 779 S.W.2d 929, 931–32 (Tex. App.—Corpus Christi–Edinburg 1989, writ denied); *see also Dietrich v. Goodman*, 123 S.W.3d 413, 422 (Tex. App.—Houston [14th Dist.] 2003, no pet.) ("Outside influence must emanate outside the jury deliberations, and thus, information

13

introduced by a juror to the rest of the panel fails to constitute outside influence."). Therefore, "a juror's injection of the juror's personal experiences, knowledge, or expertise into the jury deliberations, though improper, does not constitute an 'outside influence' on the jury because it emanates from inside the jury." *See Wichman v. Kelsey-Seybold Med. Grp., PLLC*, No. 14-18-00641-CV, 2020 WL 4359734, at *4 (Tex. App.—Houston [14th Dist.] July 30, 2020, no pet.) (mem. op.) (holding that juror's sharing of personal experience about father's diverticulosis and symptoms, and her conclusions about plaintiff's condition based on that experience, with jury during deliberations in medical-negligence case was not outside influence); *Soliz*, 779 S.W.2d at 931–32 (holding that juror's improper discussion of his personal knowledge of bar involved in wrongful-death case based on his prior experiences at that bar did not constitute outside influence).

And although a juror may testify that another juror improperly viewed the scene of the events giving rise to the litigation, such testimony must not require delving into deliberations. *See Golden Eagle Archery*, 24 S.W.3d at 370.[6]

---

[6] *See also Chavarria v. Valley Transit Co.*, 75 S.W.3d 107, 110–11 (Tex. App.—San Antonio 2002, no pet.) (holding testimony from other jurors that presiding juror, despite court's instructions, improperly viewed and investigated accident scene, which she used to persuade jury during deliberations required "delving into deliberations" and therefore was not admissible evidence of jury misconduct).

14

**b.**     *Waiver*

At the outset, we address Rios's contention that Nissan waived any error with respect to the improper Rule 327(b) and Rule 606(b) testimony. In her response and post-submission letter, Rios argues that by failing to obtain a running objection or to object each time an allegedly improper question was asked during the hearing before the trial court, Nissan waived its objections to this testimony. We disagree.

In response to Rios's amended motion for new trial, which was based primarily on juror misconduct, Nissan filed its "objection and response" in which it argued that the declarations attached to the motion for new trial contained improper juror testimony about deliberations in violation of Texas Rule of Civil Procedure 327(b) and Texas Rule of Evidence 606(b). At the hearing on the motion for new trial, following Juror 31's first piece of testimony about Juror 24's alleged comments during deliberations, Nissan objected "to this line of questioning about comments made during deliberations." Nissan further argued:

> [NISSAN]: Comments made during deliberations are absolutely off limits for a juror to testify about in a court post[-]verdict. This testimony that they've elicited is directly in violation of Texas Rule of Evidence 606-B, and Texas Rule of Civil Procedure 327-B, which talks about prohibited testimony or other evidence.
>
> "During an inquiry into the validity of a verdict or indictment, a juror may not testify about any statement made or incident occurred during the jury's deliberations. The effect of anything on that juror's or another juror's

15

vote, or any juror's mental processes concerning the verdict or indictment, the Court may not receive—

[COURT]: So, I think that's limited though if you are talking about them considering something that's outside of the evidence. Any outside influence is the exception, right?

[NISSAN]: An outside influence is something that comes to a juror from out—from other than a statement by another juror. ***And [Juror 24's] statements to her are not an outside influence under the case law.  An outside influence is a party or an attorney or somebody talking to the juror or them watching something on the news, not her saying [Juror 24] told me this.  A statement by a fellow juror is not an outside influence.  It is absolutely prohibited.  It's not just the rules***.

The Texas Supreme Court and the U.S. Supreme Court have both addressed this and spoken on the subject.  They have determined that protecting jurors and juries from --

[COURT]: Okay.  So I've got that part.  And your response?

[RIOS]: Your Honor, this is for the reviewing Court to rule upon. The record needs to be clear as to what [Juror 24] said. What he said and there are also outside influences that we'll get to with her additional testimony, Your Honor.

[COURT]: All right.  So I'm overruling the objection; however, I do agree that any specific statements during deliberations that don't deal with this particular issue is not allowed.

(Emphasis added).

Throughout the testimony of Jurors 31 and 33, Nissan objected another seven times on the grounds that various questions elicited testimony about what occurred during deliberations.  And at the conclusion of the new trial hearing, Nissan reurged

16

its objection that the trial court "should not consider what happened during the deliberations. It is absolutely improper."

Nissan further objected, citing to *Golden Eagle Archery*, that the testimony the trial court heard was not an outside influence. The trial court cut Nissan's argument off, stating "I'm going to stop you because you are repeating the case law and I think most of that has already been cited . . . . I will take this under advisement[.]"

The Texas Supreme Court has adopted a "common-sense approach to error preservation." *Browder v. Moree*, 659 S.W.3d 421, 423 (Tex. 2022) (citing *Thota v. Young*, 366 S.W.3d 678, 690 (Tex. 2012)). "A party preserves error by a timely request that makes clear—by words or context—the grounds for the request and by obtaining a ruling on that request, whether express or implicit." *Id.* (quoting *In re Commitment of Hill*, 334 S.W.3d 226, 229 (Tex. 2011)); *see also State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 241 (Tex. 1992) (framing preservation inquiry as "whether the party made the trial court aware of the complaint, timely and plainly, and obtained a ruling"). And although a party generally must preserve error by objecting each time objectionable evidence is admitted, when a trial court has just overruled a valid objection to the same testimony, a party is not required to constantly repeat the same objection. *See Kelly v. State*, 321 S.W.3d 583, 598 (Tex. App.—Houston [14th Dist.] 2010, no pet.)

(citing *Cardenas v. State*, 787 S.W.2d 160, 162 (Tex. App.—Houston [1st Dist.] 1990, pet. ref'd)).[7]  This is especially true when the trial court is acting as the factfinder.

Here, we have no doubt the trial court was well aware of Nissan's complaint—that juror testimony about deliberations was not admissible and none of the testimony elicited was evidence of an outside influence.  Nissan made numerous objections to the jurors' testimony and the admission of their declarations.  The trial court repeatedly overruled those objections—and each time allowed the jurors to testify about what happened during the jury's deliberations.

Based on the facts here, and utilizing a common-sense approach to error preservation, we conclude that Nissan adequately preserved this issue for our review.[8] *See Browder*, 659 S.W.3d at 423.

---

[7]  *See also, e.g.*, *Stairhime v. State*, No. 01-13-00493-CR, 2015 WL 6081596, at *3 (Tex. App.—Houston [1st Dist.] Oct. 15, 2015, pet. ref'd) (mem. op., not designated for publication) (explaining that when trial court has just overruled objection, objecting party is not required to constantly repeat objection when repeated objections would be futile, and holding that appellant was not required to repeat same excluded questions to all 100 prospective jurors in order to preserve error).

[8]  To the extent that Rios argues that Nissan waived its objections by eliciting objectionable testimony about deliberations, we likewise disagree.  Once the trial court allowed the objectionable testimony, Nissan "was entitled to defend itself by explaining, rebutting, or demonstrating the untruthfulness of the objectionable evidence without waiving its objection." *Scurlock Oil Co. v. Smithwick*, 724 S.W.2d 1, 4 (Tex. 1986).

18

### c. *Lawsuit against Memorial Hermann Hospital*

Here, Jurors 31 and 33 testified to alleged misconduct by Juror 24—i.e., his statements during deliberations that the Rios family had another lawsuit against Memorial Hermann. Specifically, Juror 31 testified that Juror 24 stated during deliberations "that the family had another lawsuit against Memorial Hermann and that they were going to recover money in that lawsuit." Juror 33 testified similarly that "towards the end of the afternoon [of deliberations] . . . there were six of us that were voting for the plaintiffs' side. And [Juror 24] was trying to convince everyone[,] and he stated, [w]ell, she has another lawsuit against Memorial Hermann." These accounts are unquestionably juror statements about matters that occurred during their deliberations.

Because these are statements about matters that occurred during the jury's deliberations, they are inadmissible unless discussing an outside influence. *See* TEX. R. CIV. P. 327(b); TEX. R. EVID. 606(b). We agree with Nissan that these statements do not constitute evidence of an outside influence. Juror 24's statements concerning "another lawsuit" and the potential for the Rios family to "recover money in that lawsuit" are very similar to the statements made by the jurors in *Golden Eagle Archery*—specifically, that the plaintiff may have "already gotten a big settlement" and therefore "did not need any more money out of this case." *See Golden Eagle Archery*, 24 S.W.3d at 366. As noted above, the *Golden Eagle Archery* court

19

explicitly held that these statements, i.e., speculation about a settlement, concerned matters occurring during deliberations and were not evidence of an outside influence. *See id.* at 370. The same type of speculative statements was made here, and we conclude, as the supreme court did in *Golden Eagle Archery*, that these statements are not evidence of an outside influence.

Rios contends that the Texas Court of Criminal Appeals decision in *McQuarrie v. State*, 380 S.W.3d 145 (Tex. Crim. App. 2012), controls over *Golden Eagle Archery*. In *McQuarrie*, the court of criminal appeals, interpreting Texas Rule of Evidence 606, held that internet research conducted by a juror during an overnight break during deliberations, which was then relayed by that juror to the rest of the jury the next morning, was an outside influence. *Id.* at 148, 154. The court reasoned that the information was discovered through an outside source, i.e., the internet, and was therefore an outside influence on the jury, even though it was communicated through a juror. *Id.* at 153–55.

But because this is a civil appeal, we follow the binding precedent of the Texas Supreme Court. *See, e.g.*, *Autry v. Dearman*, 933 S.W.2d 182, 190 n.8 (Tex. App.—Houston [14th Dist.] 1996, writ denied) ("[W]e are bound to follow only United States Supreme Court and Texas Supreme Court decisions on questions of law in civil cases."). *Golden Eagle Archery* remains good law and the *McQuarrie* decision does not alter the Texas Supreme Court's interpretation of the applicable rules.

20

But even applying *McQuarrie*, there was no evidence before the trial court that Juror 24's statement about the alleged Memorial Hermann lawsuit actually originated from a source other than the jurors themselves or the evidence introduced at trial. Both jurors testified that Juror 24 did not tell the other jurors where he obtained that information or how he learned it, and no one confirmed his statement. They testified only that it was their "impression" that Juror 24 got this information "from some other source." But that source was never identified.[9]

And Juror 24, for his part, testified that he might have assumed that there was a lawsuit against the hospital because of a statement made in closing argument "not to worry about the financials of the hospital and the bills because that stuff's already been paid." He "unequivocally" denied obtaining information regarding this case from any outside source.

Even discounting Juror 24's testimony as not credible, as the trial court found, the underlying record still does not support the trial court's conclusion that Juror 24 obtained information from an outside source. Rather, it is equally possible he obtained that information from the evidence introduced at trial. Nissan introduced

---

[9]    In contrast, the source of the juror's information in *McQuarrie*—the internet—was clear and undisputed. Two jurors averred that a third juror "researched [on the internet] the effects of date rape drugs when the jury was released for the night and . . . relayed that information to the rest of the jury the next morning." *McQuarrie v. State*, 380 S.W.3d 145, 148–49 (Tex. Crim. App. 2012).

two exhibits at the hearing that were admitted at trial, each of which listed "Memorial Hermann Health System" as a party in the case style of the underlying case.

Thus, the fact that Memorial Hermann had been a party to the lawsuit at one time was evidence that was before the jury in this case, whether or not they considered it during deliberations. Considering that fact, and the complete lack of any evidence as to an outside source for Juror 24's statement, we cannot agree that the record supports the trial court's conclusion that Juror 24's speculation about "another lawsuit" amounted to an outside influence improperly brought to bear on the jury.

Accordingly, Juror 31's and 33's testimony with respect to Juror 24's statements concerning a lawsuit against Memorial Hermann was not admissible evidence of misconduct. *See* TEX. R. CIV. P. 327(b); TEX. R. EVID. 606(b). And the trial court clearly abused its discretion by granting a new trial based on this inadmissible evidence.

### d. *Knowledge of Scene*

We likewise conclude that the underlying record does not support the trial court's finding that Juror 24 committed misconduct by driving "by the scene of the fire every day during trial (before and during deliberations) and discuss[ing] information he learned from outside of the trial with other jurors."

At the new trial hearing, Juror 31 testified that Juror 24 shared that he had gained information about the particular intersection where the fire had started. She testified that Juror 24 told her and other jurors that he has "driven by that golf course [where the fire occurred] before and he knows that the driveway leading up to it would not have made one of the witnesses' testimony valuable in this case." Juror 31 confirmed that Juror 24 made this statement during deliberations.

Juror 31's testimony, again, concerns statements made by Juror 24 during the jury's deliberations and is therefore inadmissible unless it is evidence of an outside influence. *See* TEX. R. CIV. P. 327(b); TEX. R. EVID. 606(b). We conclude it is not. As demonstrated above, "a juror's injection of the juror's personal experiences, knowledge, or expertise into the jury deliberations, though improper, does not constitute an 'outside influence' on the jury because it emanates from inside the jury." *See Wichman*, 2020 WL 4359734, at *4. This is true even if the juror's knowledge or experience comes from visits to the scene of the accident or personal experience at the locations involved in the lawsuit—as Juror 24's knowledge does here. *See Chavarria v. Valley Transit Co.*, 75 S.W.3d 107, 110–11 (Tex. App.—San Antonio 2002, no pet.); *Soliz*, 779 S.W.2d at 931–32.

For that reason, Juror 24's injection of his knowledge about the location of the accident and his impression of that on the evidence at trial, which he shared with the jury during its deliberations, emanated from inside the jury and was not an

23

outside influence. Accordingly, Juror 31's testimony with respect to these statements was not admissible evidence of juror misconduct. The trial court therefore clearly abused its discretion by granting a new trial based on this inadmissible evidence. *See* TEX. R. CIV. P. 327(b); TEX. R. EVID. 606(b).

## 2. Pre-Deliberation Conduct

We now turn to the additional findings of misconduct cited by the trial court in its order. Specifically, the trial court found that Juror 24 violated his oath and the court's admonitory instructions[10] by:

- Discussing the case with other jurors before the parties rested;

- Presenting himself to the other jurors as having special knowledge, over and over;

- Attempting to persuade them before deliberation began; and

- Criticizing Rios's evidence throughout the trial, including about how the fire started and traveled in the truck.

The trial court also found that Juror 24 drove by the scene of the accident "every day during trial (before and during deliberations)."

Even if we were to conclude that the above is evidence of misconduct, there is no evidence that this conduct caused a probable injury to Rios. *See In re Whataburger Rests.*, 429 S.W.3d at 599 (stating that complaining party has burden

---

[10] *See* TEX. R. CIV. P. 226a.

24

to prove all three elements, including probable injury, before new trial can be granted).

The findings above all appear to be interrelated and dependent on Juror 33's declaration and testimony at the evidentiary hearing, which the trial court found to be "especially credible." Specifically, in her declaration, Juror 33 stated:

> During the second week of the three[-]week trial, at lunch with other jurors present, [Juror 24] openly expressed criticism of evidence presented by the Rios Family about how the subject fire started and traveled on the Nissan Titan. [Juror 24] stated, "I know about trucks and this would not have happened." Given the substance and tone of [Juror 24]'s comment, it was clear to me that he had already made up his mind in favor of Nissan North America before hearing all the evidence.

Juror 33 elaborated on this statement at the evidentiary hearing. She testified that, prior to deliberations, Juror 24 failed to follow the trial court's instruction not to discuss the case by "discuss[ing] things vaguely," and bringing "up some items," such as "[h]is knowledge on vehicles." She explained that during the last week of trial, Juror 24 "would just state that with his knowledge of trucks, he didn't think this would happen." Juror 33 confirmed that Juror 24 made this comment multiple times, in the presence of the other jurors, and before all the evidence was in and deliberations began. She testified that Juror 24 "presented himself" as someone that had special knowledge, and that Juror 24 "certainly had the[] attention [of other jurors]. And they were paying attention to what he was saying."

25

While based on the above testimony the trial court could have concluded that Juror 24 engaged in misconduct by violating the trial court's admonitory instructions in discussing the case and evidence pre-deliberation, a "violation of a trial court's admonitory instructions alone is not sufficient to warrant a new trial." *Holland v. Lovelace*, 352 S.W.3d 777, 786 (Tex. App.—Dallas 2011, pet. denied); *see also Soliz*, 779 S.W.2d at 934 (rejecting argument that "a party to a suit is entitled to a new trial, as a matter of law, upon proof of a violation of the admonitory instructions" because violation of admonitory instructions "is not sufficient grounds for a new trial").[11]

Rather, a party seeking a new trial based on a juror's failure to follow admonitory instructions must establish probable injury. *See In re Health Care Unlimited, Inc.*, 429 S.W.3d 600, 602 (Tex. 2014) (orig. proceeding); *In re Zimmer, Inc.*, 451 S.W.3d 893, 904 (Tex. App.—Dallas 2014, orig. proceeding). "To show probable injury, there must be some indication in the record that the alleged misconduct most likely caused a juror to vote differently than he would otherwise have done on one or more issues vital to the judgment." *In re Health Care Unlimited*, 429 S.W.3d at 603 (quoting *Redinger*, 689 S.W.2d at 419). We find no evidence in

---

[11] *See also In re Zimmer, Inc.*, 451 S.W.3d 893, 904 (Tex. App.—Dallas 2014, orig. proceeding); *Sharpless v. Sim*, 209 S.W.3d 825, 828 (Tex. App.—Dallas 2006, pet. denied) ("Although [juror's] violation of the court's admonitory instruction against independent investigation had the potential to cause harm, the act itself is not sufficiently prejudicial to justify a presumption of harm.").

the record that Juror 24's discussion of the case pre-deliberation, including his criticism of Rios's case and comments on the evidence, affected any juror's vote.

As noted above, Juror 33 generally stated that the other jurors were "paying attention" to what Juror 24 said, and that he "certainly had their attention." However, the record does not establish that the verdict would have been different had this alleged misconduct not occurred.

Although Juror 33 made a vague conclusory statement that Juror 24's improper conduct prior to deliberations caused the ultimate vote changing and verdict, no evidence of this issue was presented. Rather, both she and Juror 31 testified that nothing Juror 24 said affected their vote. Juror 33 further testified that although she was leaning toward Rios at the start of deliberations, after the jurors went "through the questions [they] were charged with," she found herself leaning toward Nissan. And she ultimately changed her vote to be in favor of Nissan "after jury deliberations and discussions amongst the entire panel." Juror 33 additionally testified that she did not believe that Rios proved that the fire started in the truck's engine compartment or that the fire was caused by the EGI wire harness.

And, tellingly, none of the other members of the jury—including any juror whose vote changed—testified at the hearing. There was no other evidence presented that any other juror voted a particular way based on anything Juror 24 said

27

pre-deliberation.[12] *See In re Zimmer*, 451 S.W.3d at 904–05 (holding that affidavits that jurors violated admonitory instructions by repeatedly discussing merits of case before close of evidence and deliberations did not establish basis for new trial because there was no evidence that "any particular juror was influenced to vote as he or she did on the liability questions as a result of the conversations described in the affidavits"); *Holland*, 352 S.W.3d at 784 (holding that unspecified negative comments were insufficient to warrant new trial where there was no evidence any comment most likely caused jurors to vote differently than they would have voted otherwise on issue vital to judgment and, in contrast, evidence demonstrated that negative comments had no impact on jurors' decision).

As to the trial court's finding that Juror 24 drove by the scene of the accident "every day during trial (before and during deliberations)," we likewise conclude that there is no evidence in the record that this conduct resulted in probable injury to Rios.

At the hearing, Juror 24 confirmed that he was familiar with the location of where the incident occurred:

---

[12] As discussed in more detail above, Jurors 31 and 33 both testified that the jury's vote changed during deliberations from 6-6 to 11-1 after Juror 24 stated that Rios had another lawsuit against Memorial Hermann Hospital. For the reasons above, that evidence is inadmissible. There is nothing in the record tying any of Juror 24's *pre-deliberation* conduct to any juror's vote.

Q. (By Mr. Villareal) There was—there's been an allegation that wasn't in the declarations, [Juror 24], that you drove by the scene while the trial was going on; is that true?

A. I did. Pretty much five days a week—

Q. So you didn't—

A.—every week of the year. That's actually the road that I go home.

Q. So you are familiar with the location where the incident occurred?

A. Absolutely, yes. I drive that road every day I go home.

Although we do not agree that this testimony supports the trial court's finding that Juror 24 drove by the scene every day during the trial, as opposed to simply every day of the year because that is his route home, even if that finding was supported—there is no evidence that this testimony resulted in probable injury to Rios.

Indeed, nothing in the record indicates that Juror 24 communicated anything to the other jurors about what he learned from allegedly driving by the scene every day during trial—other than those statements made during deliberations—which, as we concluded above, are inadmissible. Or that simply driving by the scene had any effect on Juror 24's vote or the vote of any other juror. Because no evidence establishes that the verdict would have been any different had Juror 24 not driven by the scene during trial, Rios has not shown probable injury. *See, e.g.*, *Sharpless v. Sim*, 209 S.W.3d 825, 828 (Tex. App.—Dallas 2006, pet. denied) (holding no probable injury because juror who conducted independent investigation testified it

had no effect on her deliberations or vote, and she did not communicate information learned through investigation to other jurors).

For all of these reasons, the above-cited evidence of pre-deliberation conduct does not establish that the verdict would have likely been different had the conduct alleged not occurred and thus, does not establish a basis for an order granting a new trial premised on juror misconduct. *See In re Zimmer*, 451 S.W.3d at 904–05. Accordingly, the trial court clearly abused its discretion by granting a new trial based on this evidence.

Because we conclude that the trial court clearly abused its discretion by granting a new trial based on juror misconduct, we sustain Nissan's first issue.

## C. Cumulative Error

The trial court also found cumulative error, warranting a new trial, based on:

- Nissan's display of one Rios's exhibits during its closing argument;

- Juror 24's untruthfulness and dishonesty during voir dire; and

- Juror 46's dishonesty about her criminal background.

Multiple errors, even if considered harmless when taken separately, may result in reversal for a new trial if the cumulative effect of the errors is harmful. *Haynes*, 598 S.W.3d at 357. However, where there are no errors, there can be no cumulative error. *See id.*; *see also In re BCH Dev., LLC*, 525 S.W.3d 920, 930 (Tex. App.—Dallas 2017, orig. proceeding) ("To the extent the trial court granted a new

trial on the basis of cumulative error, that basis is not a reason that is legally appropriate. When there are no errors, we reject cumulative error arguments.").

We consider each in turn.

### 1.     Use of Plaintiff's Exhibit 75 during Closing

In its order granting a new trial, the trial court found that Nissan's counsel improperly displayed extremely prejudicial evidence before approaching the bench and highlighted that evidence in its closing argument. Specifically, the trial court found that it considered the admissibility of Rios's Exhibit 75, which was Adam Rios's "Patient Care Report" from Memorial Life Flight, pre-trial:

> Th[is] exhibit contained a statement allegedly attributable to the decedent, Mr. Rios, related to the origin of the fire. Specifically, the exhibit stated that Mr. Rios noticed "a fire in the bed of his truck," and "pulled over" after briefly being trapped inside his truck. Because of the highly prejudicial nature of the document on a critical issue, and because it was likely inadmissible, the Court instructed the parties— and the parties agreed—to approach the bench before putting that evidence before the jury.

The trial court explained that the parties did not discuss this "objectionable portion of the document" during trial and did not show it to the jury. "Nonetheless, contrary to the Court's ruling, [Nissan's] lawyer displayed it and highlighted it in his PowerPoint presentation during closing argument."

The trial court recited that the following portion of the exhibit was displayed to the jury:

31

Life Flight was requested to the town of Pasadena to rendezvous with EMS for a trauma pt. Allegiance EMS responded to the scene of a vehicle fire where a 47 y/o male 96 kg with a history of diabetes mellitus type 2, the patient noticed a fire in the bed of his truck, pulled over and was briefly trapped (less than 30 seconds) inside his truck where he sustained 1st and second degree burns to his head, face, shoulders, and back. PTA treatments included a 15ga IV to the left AV, and Fentanyl for pain. This was not a vehicle accident.

While showing this document to the jury, Nissan's counsel stated: "And then, finally, we have this from Plaintiff's exhibit, which they offered into evidence. The patient noticed a fire in the bed of his truck. This is the patient reporting to Memorial Hermann in the patient care report."

The trial court acknowledged that it "instructed the jury to disregard the highlighted evidence, [but] the irreversible damage had been done." The trial court noted that "the origin of the fire was a crucial and hotly contested issue," and that by violating the trial court's ruling, Nissan showed the jury inadmissible hearsay evidence in the form of a statement made by Mr. Rios that purportedly validated Nissan's factual theory of the case—that the fire originated in the bed of the truck. The trial court found that this was improper, highly prejudicial, and deliberate on Nissan's part. All of which the trial court found to be supportive of granting a new trial.

Nissan argues that the record does not support this articulated basis for a new trial because: (1) it was not improper for Nissan to display Exhibit 75 because Rios admitted that exhibit without redaction; (2) the trial court's curative instruction

32

remedied any error; (3) Exhibit 75 was cumulative of other evidence; and (4) the invited error doctrine precludes a new trial on this basis. For the reasons below, we agree with Nissan and conclude that the trial court's order with respect to this ground is not supported by the record.

We first note that to the extent that the trial court expressly or impliedly found that Nissan violated its limine order by displaying to the jury "inadmissible hearsay evidence," we disagree with that characterization of the record.

Before trial began, the trial court took up Rios's motions in limine, including motion in limine number 7—which requested that certain statements attributed to Adam Rios in two documents, including the Memorial Hermann Life Flight Patient Care Report, be "redacted from the report and not be referenced unless and until [Nissan] can properly prove that Rios was the source of such information."

The following exchange occurred between the parties and the trial court with respect to motion in limine 7:

> [NISSAN]: Your Honor, this motion in limine deals with two documents. We have the Memorial Herman, Life Flight patient care report, and we have the Houston Arson Bureau's incident report. Plaintiffs are not arguing against the admissibility of these documents, and they've said as much in their motion in limine. To the extent that there are statements by Mr. Rios in these documents, again, they're not arguing against authenticity or admissibility of the document.
>
> A number of hearsay exceptions would apply, not the least of which statement against interest but in addition, excited

33

utterance, present sense impression, then-existing physical condition, statements made for medical diagnosis or treatment, dying declaration, opposing party statement, and records of regularly conducted activity under Rule 801. So to the extent they are not arguing that these documents stay out, we will, as always, abide by the Texas Rules of Evidence with regard to hearsay. If they think there's something objectionable, we would ask that it be taken up in the course because these documents will be admitted.

[RIOS]:       Of course, the statement by Ms. Rios is, by definition, not hearsay. So we don't need any of the 23 exceptions to the Rule against hearsay.

What we're saying is if they don't have somebody who is going to come in here and testify, I heard Adam Rios say this, then it is hearsay if that person hasn't come in here. So these records, you can redact inadmissible hearsay from the records and we're just saying that any statement in the records that are not authenticated by somebody who actually heard him say that, should be redacted.

[COURT]:     **I agree with that if it doesn't meet another exception**. But I don't know that I can just grant or deny Number 7 because I think it's going to depend on which specific ones you're talking about.

[RIOS]:       So should we just again, address that before it gets blurted to the jury?

[COURT]:     Yes. Or whatever exhibit it is. If it's exhibits that you're asking to be redacted or whatever.

As is evident from the above exchange, the trial court never ruled that the statements purportedly attributable to Adam Rios and contained in Exhibit 75 were actually inadmissible. Rather, the trial court stated that it agreed that the statements should be redacted "if [they] do[n't] meet another [hearsay] exception," and

34

instructed the parties to address the issue again during trial before the evidence was presented to the jury. In sum, there was no ruling on the admissibility of these objected-to statements—only an instruction that the parties should approach the bench before presenting that evidence (including documentary exhibits) to the jury.[13]

Nissan argues that Rios waived any requested redactions, and therefore contends it was not error to reference this statement in closing without approaching the bench first, by introducing this exhibit in its entirety without redaction. We agree.

As noted, the statement referenced by Nissan in its closing argument was contained in Plaintiff's Exhibit 75. This exhibit was introduced *by Rios* during the testimony of her own expert witness. Although this witness was not questioned about the specific statement highlighted by Nissan during closing argument, Rios's counsel conceded during the colloquy at trial that the version offered and admitted at trial was unredacted—i.e., Adam Rios's statement "is in there."

Although Rios was the party requesting the limine order with respect to this statement, the trial court never actually granted that motion in limine. Even if it had, a protective limine order alone does not preserve error. *See In re Toyota Motor Sales*,

---

[13] The trial court's order on Rios's motions in limine likewise reflects this lack of ruling on motion in limine number 7. The order grants motions in limine numbers 1, 4, and 9; denies motions in limine numbers 5 and 6; and notes that motions in limine numbers 2 and 3 are agreed. There is no ruling listed for motions in limine numbers 7 or 8.

407 S.W.3d at 760. "Furthermore, where, as here, the party that requested the limine order *itself* introduces the evidence into the record, and then fails to immediately object, ask for a curative or limiting instruction or, alternatively, move for mistrial, the party waives any subsequent alleged error on the point." *Id.*[14]

The record is clear that Rios offered the unredacted exhibit into evidence—and that unredacted exhibit was admitted into evidence by the trial court. Once that evidence was in the record and before the jury, as introduced and admitted by Rios, "it was in for all purposes and a proper subject of closing argument." *Id.* (holding that plaintiffs, who inadvertently read into record portion of objected-to deposition testimony, introduced that evidence into record and waived any error).

But even if Rios did not waive error by offering and admitting an unredacted copy of Exhibit 75, and further assuming that Nissan's reference to the exhibit in closing argument was improper, we still conclude that the trial court's order is not supported by the record. This is because the trial court gave a curative instruction,

---

[14]   *See also Sw. Elec. Power Co. v. Burlington N. R.R. Co.*, 966 S.W.2d 467, 473 (Tex. 1998) ("A party on appeal should not be heard to complain of the admission of improper evidence offered by the other side, when he, himself, introduced the same evidence or evidence of a similar character."); *Balderas as Next Friend of Balderas v. Zurich Am. Ins. Co.*, No. 14-20-00262-CV, 2022 WL 1257041, at *12 (Tex. App.—Houston [14th Dist.] Apr. 28, 2022, no pet.) (mem. op.) (holding that appellant, who introduced medical records containing blood alcohol level test results into evidence during own expert's testimony, waived his complaints as to admissibility of those test results on appeal).

as requested by Rios, and the trial court's order does not demonstrate that the harm was incurable.

Texas law is clear that absent a compelling rebuttal, curative instructions do work. *In re Rudolph Auto., LLC*, 674 S.W.3d 289, 310 (Tex. 2023) (orig. proceeding). The Texas Supreme Court has emphasized that "[i]ncurable argument is . . . rare." *Id.* (quoting *Living Ctrs. of Tex., Inc. v. Penalver*, 256 S.W.3d 678, 681 (Tex. 2008)). "The party claiming incurable harm must persuade the court that, based on the record as a whole, the offensive argument was so extreme that a juror of ordinary intelligence could have been persuaded by that argument to agree to a verdict contrary to that to which he would have agreed but for such argument." *Id.* at 311 (quoting *Phillips v. Bramlett*, 288 S.W.3d 876, 883 (Tex. 2009)).

Thus, to rebut the presumption that the jury followed the trial court's instructions, "there must be some reviewable explanation for why courts can reliably conclude that *this* jury, unlike most, was incapable of following instructions." *Id.* at 312. A new-trial order can satisfy that requirement by identifying statements that are "so incurably harmful as a matter of law"[15] or explaining how "argument that is not inherently incurable may prove incurable in a particular trial." *Id.* at 312–13. A

---

[15] Examples of this may include "remarks of racial prejudice, unsupported and extreme attacks on opposing parties and witnesses, or accusing opposing parties of witness manipulation or evidence tampering." *In re Rudolph Auto., LLC*, 674 S.W.3d 289, 312 (Tex. 2023) (orig. proceeding).

new trial order predicated on the latter ground "must explain *why* the otherwise-curable problem . . . was nonetheless not susceptible to cure (by the instruction . . . that was given)." *Id.* at 313.

Here, it is undisputed that the trial court instructed the jury to disregard Nissan's reference to the statement used in closing argument. After the trial court heard argument from the parties with respect to the use of Exhibit 75 during closing argument, the trial court concluded that "exhibit 75 . . . will need to be redacted," and requested that Rios prepare an instruction that they wanted given to the jury. Rios's counsel prepared an instruction, to which the trial court made one minor clarification, and then read to the jury:

> All right. Ladies and gentlemen of the jury, before the break counsel for Nissan put up a slide and suggested a possible location of the fire. Neither his comment nor the slide is evidence. You are instructed to disregard counsel's comment, disregard the last slide, and afford them no weight or consideration in your deliberations.

Thus, Rios requested *and received* exactly what she asked for—a curative instruction to the jury to disregard the statement.[16]

---

[16] We also note that in addition to receiving the exact relief she requested, Rios failed to move for a mistrial after this purportedly inadmissible evidence was displayed to the jury during closing arguments. *See One Call Sys., Inc. v. Hous. Lighting & Power*, 936 S.W.2d 673, 677 (Tex. App.—Houston [14th Dist.] 1996, writ denied) ("To preserve error *after* inadmissible evidence is allowed before the jury, a party must sequentially pursue an adverse ruling from the trial court by: (1) objecting to the complained-of evidence, (2) moving the court to strike the evidence from the record, (3) requesting the court to instruct the jury to disregard the evidence, and (4) moving for a mistrial. Absent an adverse ruling from the trial court, nothing is preserved for appellate review."); *see also In the Interest of O.Z.O.*, No. 14-14-

In its order, the trial court recognized that "[t]aken alone," the use of Exhibit 75 during closing argument "could possibly have been cured by the Court's instruction to disregard the improperly shown slide." "Coupled with the jury misconduct, however, the introduction of the slide makes the application of the cumulative-error doctrine appropriate." But for all the reasons detailed above, we do not agree that the record supports the trial court's finding of juror misconduct under Texas law.

And the trial court's order, while it certainly detailed why it believed the use of the statement to be highly prejudicial, did not otherwise explain why this statement was either incurably harmful as a matter of law or was nonetheless not susceptible to cure in this particular case with this particular jury. *See In re Rudolph Auto.*, 674 S.W.3d at 312–13. Rather, it stated in conclusory fashion that displaying

00768-CV, 2015 WL 5093198, at *2–3 (Tex. App.—Houston [14th Dist.] Aug. 27, 2015, no pet.) (mem. op.) (holding argument that trial court's instruction to disregard inadmissible testimony was insufficient to remove prejudice was not preserved because trial court sustained appellant's objection, struck inadmissible testimony, and instructed jury to disregard, and appellant did not further move for mistrial and obtain adverse ruling from trial court regarding mistrial). Although "[a] complaint of incurable argument may be asserted and preserved in a motion for new trial, even without a complaint and ruling during the trial," *see Phillips v. Bramlett*, 288 S.W.3d 876, 883 (Tex. 2009), by raising this issue only in conjunction with a cumulative error argument, Rios effectively concedes that the harm from Nissan's presentation of this evidence during closing argument was not incurable. *See, e.g.*, *Haynes v. Union Pac. R.R. Co.*, 598 S.W.3d 335, 357 (Tex. App.—Houston [1st Dist.] 2020, pet. dism'd) ("Multiple errors, *even if considered harmless when taken separately*, may result in reversal if the cumulative effect of the errors is harmful." (emphasis added)).

39

this statement to the jury resulted in "irreversible damage" and that the introduction of this evidence, taken together with the jury misconduct, warranted a new trial. "We cannot accept such a conclusory statement." *Id.* at 298, 313 (holding that new-trial order, which concluded that it was "obvious" that harm from introduction of inadmissible testimony "could not be eliminated or removed," was conclusory, and thus, this stated ground did not support new trial).

Accordingly, based on this record, we must conclude that this stated ground is not supported by the record and does not support the granting of a new trial. *Id.* at 313–14.

### 2.    Juror 24's dishonesty during voir dire

In concluding there was cumulative error, the trial court found that Juror 24 was untruthful during voir dire. Specifically, Juror 24 stated he would be fair and impartial, that he would listen to all the evidence, and that he would be as fair to Rios as he would to Nissan. The trial court found that this answer was untrue. Citing to Juror 24's conduct before and during deliberations, the trial court found that Juror 24 "made up his mind before hearing any of the evidence, and certainly before he heard all of the evidence." Accordingly, the trial court concluded that his dishonesty during voir dire and his pre-deciding the case constitutes misconduct.

In addition to the testimony that we have already considered and rejected as evidence of juror misconduct warranting a new trial,[17] Juror 31 testified that Juror 24 stated that he had made up his mind on day one of the trial. Juror 31 testified that by day one, it was clear Juror 24 meant "on opening statements." Juror 31 explicitly testified that Juror 24 made these statements about "day one" during deliberations.

When asked if she ever heard Juror 24 say, before deliberations, that he had made up his mind on day one, Juror 31 responded: "*Not particularly*, but I can tell by his body language that he wasn't siding with you guys [i.e., Rios]." (Emphasis added). When asked again, she clarified that, before deliberations, she had heard him say "under his breath . . . I've made up my mind."

Although the failure to disclose bias is a form of juror misconduct that justifies a new trial under appropriate circumstances, "proof of a juror's failure to disclose bias must come from some source other than a fellow juror's testimony about deliberations." *Golden Eagle Archery*, 24 S.W.3d at 371. Thus, Juror 31's testimony that Juror 24 "made up his mind on day one of the trial" was testimony about

---

[17] To the extent the trial court based this finding on consideration of Juror 24's conduct already discussed above, we do not repeat that analysis here. For the same reasons it is not evidence of misconduct warranting a new trial—it is likewise not evidence that Juror 24 was dishonest during voir dire.

deliberations and is not admissible evidence of Juror 24's alleged failure to disclose

bias. *See id.*[18]

Setting that evidence aside, we are left with Juror 31's statement that she heard

Juror 24 state under his breath that he had made up his mind.[19]  This testimony,

however, does not establish when Juror 24 "made up [his] mind," or even when he

made the statement—thus, it could have been made at any point during the trial.  Nor

is this evidence that he refused to consider the evidence introduced at trial. *C.f. Bahlo*

*v. State*, 707 S.W.2d 249, 252 (Tex. App.—Houston [1st Dist.] 1986, pet. ref'd)

(concluding that juror's expression of his opinion that defendant was guilty, before

close of evidence, was not basis for reversal for juror misconduct where there was

no showing that juror refused to consider evidence later adduced at trial).  At best,

Juror 31's testimony, even though found to be credible, is inconclusive. *See Golden*

---

[18]     *See also Jefferson v. Helen Fuller & Assocs. Health, Inc.*, No. 01-11-00199-CV,
2012 WL 2357431, at *8 (Tex. App.—Houston [1st Dist.] June 21, 2012, pet.
denied) (mem. op.) ("To establish jury misconduct on grounds that the juror
concealed information during voir dire, a party must obtain proof of concealment
from a source other than jury deliberations."); *Soliz v. Saenz*, 779 S.W.2d 929, 933
(Tex. App.—Corpus Christi–Edinburg 1989, writ denied) ("Evidence emanating
from inside the jury's deliberations tending to show that a juror was biased and
prejudiced is not admissible and is, therefore, not a ground for a new trial.").

[19]     We note that Juror 24 admitted during his testimony that he made a statement to
other jurors that he had made up his mind on "day one" of the trial.  But as explained
above, Juror 24 made the statement about "day one" during deliberations.  Thus,
any testimony from Juror 24 as to what he meant by that statement, like Juror 31's
testimony, was testimony about deliberations and inadmissible. *See* TEX. R. CIV. P.
327(b); TEX. R. EVID. 606(b).

*Eagle Archery*, 24 S.W.3d at 373 (rejecting plaintiff's argument that juror, who stated to another juror she did not believe in "lawsuits like this," concealed bias during voir dire because evidence was inconclusive as to juror's meaning, and thus, did not warrant new trial).

We thus conclude that the testimony relating to Juror 24 allegedly pre-deciding the case does not establish that he was untruthful during voir dire or that he concealed bias or prejudice. *See id.* The trial court's finding with respect to this stated ground is therefore also not supported by the record.

### 3. Juror 46's dishonesty about criminal background

Finally, in concluding there was cumulative error, the trial court found that Juror 46 also committed misconduct by being dishonest about her criminal background. We disagree and conclude that this ground is also not supported by the record.

Juror 46 was asked in her juror questionnaire: "Have you ever been accused complainant or witness of a criminal case?" She responded, "no." Rios argued below, and the trial court found, that this was untruthful because she had been charged with a felony crime and later pleaded guilty.

Although the record reflects Juror 46 pleaded guilty to misdemeanor (not felony) theft and that she was discharged via deferred adjudication, we do not agree

with the trial court's conclusion that her negative response to the questionnaire amounts to juror misconduct.

As Nissan points out, the question as phrased lacked clarity or even punctuation. Considering the inartful wording, it is at least possible, maybe even probable, that Juror 46 was unsure of the meaning or misunderstood the question asked and thought it meant whether she had ever been convicted. *See id.* (holding that evidence did not establish that juror failed to answer voir dire question truthfully because it was possible juror misunderstood voir dire question). Juror 46 did not testify at the new trial hearing and the record does not indicate that anyone called her to testify. Thus, there is no other evidence in the record about her criminal record.

Furthermore, for a new trial to be warranted for jury misconduct, the movant must establish not only that the misconduct occurred, but that it was material and probably caused injury. Rios argued below that Juror 46 was statutorily disqualified from serving on the jury because of her criminal record, arguing that "[m]isdemeanor theft is one of the crimes that disqualifies a person from serving as a petit juror. TEX. GOV'T CODE § 62.102(8)."

But Section 62.102(8) provides that a person is disqualified to serve as a petit juror unless the person "has not been *convicted* of misdemeanor theft or a felony." TEX. GOV'T CODE § 62.102(8) (emphasis added). If a person has been discharged

from deferred adjudication community supervision, that dismissal and discharge "may not be considered a conviction for the purposes of disqualifications or disabilities imposed by law for conviction of an offense." TEX. CODE CRIM. PROC. art. 42A.111(c); *see also Davis v. State*, 968 S.W.2d 368, 370 (Tex. Crim. App. 1998) ("A defendant who has been discharged from deferred adjudication community supervision is immediately eligible to serve on a jury.").

Because the record reflects that Juror 46 was discharged from deferred adjudication community supervision, she was not disqualified as a matter of law from serving on the jury. Accordingly, Rios had to establish that Juror 46's incorrect answer and failure to disclose her criminal history probably caused injury. She has failed to do so.

Although the trial court found that the dishonesty of Juror 46 (and Juror 24) prevented Rios from effectively exercising her peremptory strikes, there is nothing in the record to support the conclusion that Rios would have utilized a peremptory strike on Juror 46 had she known of her criminal history. And, even if there was, "testimony about what a person 'would have' done or what 'would have' happened under different circumstances is speculative and conclusory in the absence of some evidentiary support." *In re Whataburger Rests.*, 429 S.W.3d at 599.

Accordingly, for all these reasons, we conclude that the evidence relating to Juror 46's criminal history does not establish that she was dishonest during voir dire

or that she committed misconduct. The trial court's finding with respect to this stated ground is therefore not supported by the record.

Additionally, because we have found none of the errors cited by the trial court in support of its application of the cumulative error doctrine are supported by the record, we likewise conclude that the cumulative error ground has no basis in the record or the law—and the trial court clearly abused its discretion by granting a new trial on this ground. *See In re BCH Dev.*, 525 S.W.3d at 930.

We sustain Nissan's second issue.

## Conclusion

For all the reasons above, we conclude that neither ground relied upon by the trial court in its order granting a new trial is supported by the record. As a result, the trial court clearly abused its discretion in granting a new trial. We therefore conditionally grant mandamus relief and direct the trial court to expeditiously withdraw its order and render judgment on the verdict. *See In re Toyota Motor Sales*, 407 S.W.3d at 762 (holding that writ of mandamus shall issue to correct clear abuse of discretion committed by trial court in granting new trial). A writ will issue only in the event the trial court fails to vacate its May 8, 2024 order granting a new trial.

Terry Adams
Chief Justice

Panel consists of Chief Justice Adams and Justices Hightower and Countiss.

46